[Civ. No. 12461. Second Appellate District, Division One.—February 16, 1940.]

FERNAND VIGNE, Jr., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Robert E. McGurl for Petitioner.

J. H. O'Connor, County Counsel, Douglas DeCoster, Deputy County Counsel, and Paul E. Iverson for Respondents.

YORK, P. J.—The facts which form the basis of the instant proceeding in *certiorari* are as follows: On or about July 1, 1937, one Perry Whiting, president and founder of the Whiting-Mead Company of Los Angeles, executed his last will and for the purpose of safekeeping gave it into the possession of the petitioner herein, Fernand Vigne, Jr., one of the directors of said company and a beneficiary under the said will. On February 15, 1939, in a proceeding duly instituted therefor, said Perry Whiting was found by the Superior Court of Los Angeles County to be mentally disordered and was committed to the Baldy View Sanitarium, an institution for the mentally defective. Thereafter, on the 31st of July, 1939, said Whiting was adjudged incompetent to handle his person and property and Marita Whiting, his wife, and L. A. Iverson were duly appointed guardians of his person and estate by the Superior Court of Los Angeles County. On October 3, 1939, in a proceeding instituted under section 5100 of the Welfare and Institutions Code, said Whiting was declared insane and was committed to the state hospital for the insane at Camarillo, California.

Within one week of their appointment as such, the said guardians demanded of Fernand Vigne, Jr., that he deliver to them the last will of their said ward, which demand was

refused. Thereupon, at the instance of said guardians, a citation was issued, directed to the said custodian of the will to appear and show cause why he should not deliver the possession of the will to them. Upon hearing on August 15, 1939, this proceeding was dismissed upon the ground that the court had no jurisdiction to order the custodian of the will to deliver it to the guardians. On the same day, the said ward indited a letter to the custodian requesting him to deliver the will to his (the ward's) attorney, and on August 21, 1939, a second citation was issued under the provisions of section 1552 of the Probate Code, pursuant to a petition in which it was alleged that both the ward and his guardians had made demand upon the custodian to deliver the will to their attorney but that said demands had been refused. The hearing on the second citation and order to show cause was continued from September 19, 1939, to October 3, 1939, in order that the incompetent ward might be present for questioning. Thereafter the respondent court, sitting in probate, made the following findings of fact:

"I. That the petitioners Marita Whiting and L. A. Iverson are now the duly appointed and acting guardians of the person and estate of Perry Whiting.

"II. That Perry Whiting is now and was on August 15th, 1939, mentally sane, but is now and at said time was in need of medical care and controlled hospitalization in a sanatorium or other institution, for both his physical and mental condition.

"III. That prior to August 15th, 1939, both Perry Whiting and the petitioners requested Fernand Vigne, Jr., to deliver the last Will and Testament of Perry Whiting to his attorney Paul E. Iverson, and that on August 15th, 1939, Perry Whiting executed a letter in writing to Fernand Vigne, Jr., requesting him to deliver said last Will and Testament to Paul E. Iverson; that said letter was personally delivered to Fernand Vigne, Jr., on August 22, 1939; that on October 3rd, 1939, in open court, said Perry Whiting stated that he desired Fernand Vigne, Jr., to deliver his last Will and Testament to his attorney Paul E. Iverson.

"IV. That Fernand Vigne, Jr., now has in his possession or under his control, the last Will and Testament of Perry Whiting and has failed, neglected and refused to deliver the same to Paul E. Iverson, the attorney for Perry Whiting."

Pursuant to such findings of fact the following order was thereafter made and entered:

"It is Hereby Ordered: 1. That the Citee, Fernand Vigne, Jr., deliver the last Will and Testament of Perry Whiting to his attorney, Paul E. Iverson, within ten (10) days from October 3rd, 1939. . . . "

By this proceeding in *certiorari*, the custodian of the will seeks to annul said order, contending in effect that under the provisions of sections 613, 614 and 1552 of the Probate Code (based upon sections 1800, 1459 and 1460 of the Code of Civil Procedure, respectively), the respondent court was without jurisdiction (1) to order the said custodian to deliver possession of the will to the ward's attorney, who is also the attorney for the guardians; (2) to determine questions of fact with regard to the right of possession of the will; (3) to pass upon the question of the sanity of the ward.

In' support of this theory petitioner cites the case of *Mastick* v. *Superior Court*, 94 Cal. 347, 349 [29 Pac. 869], in which, under facts very similar to those in the instant case, the Supreme Court held that the phrase "instrument in writing", as used in section 1800 of the Code of Civil Procedure, "must be construed as referring to instruments to the possession of which the guardian is entitled as an asset or as evidence of his ward's title to property. The last will and testament of the ward is not an asset. Neither is it an instrument which the guardian could use in the recovery of an asset. It cannot in any way relate to any matter within his power or duties, or in any manner affect his action as a guardian, because it cannot take effect until after his authority has ceased. He certainly cannot annul, revoke, destroy, or in any way dispose of it, nor can the court authorize him to do so, and we are unable to see upon what ground he is entitled to its possession, or to a knowledge of its contents. If it were in his hands, of course it would be his duty to preserve it; but here it appears that the maker of the will before she became incompetent, selected the petitioner as the custodian thereof, with special directions to retain the same until her death, unless she called for it, and upon her death to deliver it to her executor. The petitioner is charged with the execution of this trust. It is a trust which could be revoked only by Mrs. Langdon herself. . . . A person competent to make a will has a right to select the custodian, and to cause

it to remain in his hands until called for, or until death makes it necessary for the custodian to deliver it to the court, or to a person named in the will. To hold that the subsequent incompetency of the maker of the will entitles the guardian to the possession of the instrument would defeat the evident purpose of the maker.''

Respondents urge that at the time the Mastick case was decided section 1800 of the Code of Civil Procedure read as follows: ''Upon complaint made to him by any guardian, ward, creditor, or other person interested in the estate . . . against any one suspected of having concealed, embezzled, or conveyed away any of the money, goods, or effects, or *an instrument in writing belonging to the ward or to his estate,* the superior court, or a judge thereof, may cite such suspected person to appear before such court, and may examine and proceed with him on such charge in the manner provided in this title with respect to persons suspected of and charged with concealing or embezzling the effects of a decedent''; that in 1931 when this section was added to the Probate Code, as section 1552 thereof, it was amended to read as follows: ''Upon complaint under oath made by a guardian, ward, . . . that any person is suspected of having embezzled, concealed, smuggled or fraudulently disposed of any property of the ward, or *has in his possession or has knowledge of any instrument in writing belonging to the ward,* the court or judge may cite the suspected person to appear before the court, and may examine and proceed against him on such charge in the manner provided in this code with respect to persons suspected of having embezzled, concealed, smuggled, or fraudulently disposed of property of a decedent''; and that, therefore, the legislature had in mind the decision in the Mastick case, and in making such change in the wording of the section thereby enlarged the jurisdiction of the probate court to include that and analogous situations. (Italics added.)

This court is not in accord with respondents' contention, for the very obvious reason that if the legislature, having in mind the decision in the Mastick case, had wished to include a last will and testament within the purview of said section 1552, *supra,* it would have worded the section accordingly.

The subject to which the said section relates is expressed in its title ''Citation of persons embezzling property of the ward, etc.''; and the procedure required to be followed against such persons is outlined in sections 613 and 614 of the Probate Code. With respect to the extent of the power given to the probate court by these sections, it is stated in 11A California Jurisprudence, 463, section 338: ''Speaking of what are now Probate Code sections 612–615, as one subject, the courts have said that the power of the probate court is analogous in its extent and object to the power exercised by courts of chancery upon bills of discovery, but this probate power and jurisdiction does not trench upon equity jurisdiction. *The power of the probate court ends with the discovery of the property* and the enforcement of the remedial provisions of the statute, and does not extend beyond that. (*Koerber* v. *Superior Court,* 57 Cal. App. 31 [206 Pac. 496].) '' In the last cited case, it was said at page 34: ''This proceeding was purely in probate, ancillary and summary in its character, instituted for the purpose of the discovery of property claimed as the property of the estate.'' (Italics added.)

In other words, the court has power under these sections of the code to cite and examine a person suspected of having in his possession or of having knowledge with respect to such documents and papers as are mentioned in section 613, *supra.* Upon examination, if it appear that the suspected person has such possession or such knowledge, the court may make an order requiring him to disclose his knowledge to the guardian, and may commit him to jail until such order is complied with.

It therefore conclusively appears that the probate court acting under the authority of sections 613, 614 and 1552, of the Probate Code was without jurisdiction to order petitioner to deliver the last will and testament of the incompetent to his attorney. Moreover, the custodian of a will must respond in damages for failure to deliver the same to the clerk of the superior court ''within thirty days after being informed that the maker thereof is dead''; consequently, a delivery, such as is here contemplated, might have the result of imposing a heavy liability upon petitioner in the event of the ward's death before his restoration to capacity. (Secs. 320, 321 of the Prob. Code; *Snyder* v. *Security-First Nat. Bank,* 31 Cal. App. (2d) 660 [88 Pac. (2d) 760].)

■ Likewise, the court was without jurisdiction to pass upon the question of the ward's sanity. It was judicially determined by the proceeding of July 31, 1939, for the appointment of guardians, that Perry Whiting was incompetent to handle his person and property. The effect of this determination is to fix the status of incompetency until such time as the said incompetent is again restored to capacity.

Quoting from 2 Freeman on Judgments, fifth edition, section 902, the Supreme Court in the case of *Hellman etc. Bank* v. *Alden,* 206 Cal. 592 at 607 [275 Pac. 794], stated: "It is said courts regard a ' . . . statutory proceeding for the appointment of a guardian for the person and property of a lunatic or mentally incompetent person as a proceeding *in rem* designed to determine the legal capacity of the alleged incompetent to make contracts and to manage and dispose of his estate . . . the appointment of a guardian determines his status in this respect as against the whole world, and is ordinarily conclusive . . . ' (*Kellogg* v. *Cochran,* 87 Cal. 192, 196 [12 L. R. A. 104, 25 Pac. 677].)" See, also, *Guardianship of Carniglia,* 139 Cal. App. 629, 631 [34 Pac. (2d) 752].

Where such guardian has been appointed, "there is no method of restoration to capacity provided excepting by the procedure under section 1766 of the Code of Civil Procedure (now sec. 1470 of the Probate Code) and that section distinctly provides for the calling and examination of witnesses on the hearing, and if it is found that the person is of sound mind 'and capable of taking care of himself and his property', his restoration to capacity must be adjudged, and the guardianship of such person, if such person is not a minor, must cease". (*In re des Granges,* 102 Cal. App. 592 at 599 [283 Pac. 103].)

For the foregoing reasons, the order under review is annulled.

Doran, J., and White, J., concurred.