46 Cal.2d 227 (1956)
Estate of SPENCER H. CHARTERS, Deceased. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Trustee, etc., Petitioner and Appellant,
v.
IRENE MARIE CHARTERS YEAKEL et al., Respondents; LAURA HOERNER, Legatee and Appellant.
L. A. No. 23375. 
Supreme Court of California. In Bank. 
Feb. 17, 1956.
 Henshey & Beeman and Howard B. Henshey for Petitioner and Appellant.
 Lawler, Felix & Hall, William T. Coffin, Brady, Nossaman & Walker and Walter L. Nossaman as Amici Curiae on behalf of Petitioner and Appellant.
 Hill, Farrer & Burrill and William C. Farrer for Legatee and Appellant.
 Norman Elliott and Charles P. Lester, in pro. per., Robertson, Harney & Behr, David Robertson, Ruth Michaelson, Robertson, Harney, Drummond & Dorsey and Vernon W. Hunt, Jr., for Respondents.
 TRAYNOR, J.
 Irene Marie Charters Yeakel is the only child of Irene Meyers Charters and Spencer H. Charters. She was born on June 15, 1931. Her mother died January 2, 1942, leaving her by will the sum of $4,730.05. Her father was appointed guardian of her estate. On January 25, 1943, *230 Spencer H. Charters died leaving a will dated February 12, 1942, the material provisions of which are quoted below. [fn. 1]
 On February 5, 1943, the Security-First National Bank of Los Angeles was appointed Successor Guardian of the Estate of Irene. On February 1, 1943, the will was admitted *231 to probate. On May 25, 1944, the decree of distribution was entered declaring the Security-First National Bank of Los Angeles (hereinafter called the trustee) to be the trustee of the testamentary trust created by the will. [fn. 2]
 In 1946 Irene moved from the family home and went to live with the guardian of her person. On July 16, 1946, the trustee sold the home and added the proceeds to the trust estate. Nine accounts current were filed by the trustee, and orders were entered settling and approving each of them. In the trustee's third account current appears the following:
 "(a) The stucco bungalow carried herein at $11,000.00 was sold for the sum of $25,000.00. After paying the commission of the real estate broker and the expenses of sale, the transaction resulted in a profit of $12,615.75."
 The ninth account current was approved on September 21, 1953. *232
 On November 6, 1951, Irene married. On October 29, 1952, the trustee was discharged as guardian of her estate. She has been receiving, and it appears that she will continue to receive $154.52 per month from life insurance policies on the life of her father. The trustee has been paying her $45.48 per month, which, when added to the payments from the insurance policies, aggregates $200 per month. Since she has been receiving only $45.48 a month from the trust, a considerable amount of income has accumulated. On September 1, 1953, the trustee filed a petition that it be instructed what to do with the accumulated income. At the hearing on the petition, Irene and Laura Hoerner, decedent's sister, appeared by their respective attorneys. Francis Moeller, the other living beneficiary of the trust, did not appear. The court appointed two attorneys to appear and act as guardians ad litem of any minor or person of unsound mind, or any person or persons of a designated class who are not ascertained or who are not in being and who may participate in the trust. No testimony was taken at the hearing on the petition except the testimony of the guardians ad litem as to their fees. No documentary evidence was introduced except the file in the Matter of the Guardianship of the Estate of Irene Marie Charters. After the hearing, the court on April 30, 1954, made, among others, the findings quoted below [fn. 3] and entered the following orders: *233
 "1. That petitioner, as Trustee, under the Last Will and Testament of Spencer H. Charters, deceased, and under the Decree of Distribution made in this cause on or about the 23rd day of May, 1944 be and it is hereby ordered to either purchase a home and residence with suitable furnishings for the occupancy of Irene Marie Charters Yeakel which shall be as nearly equal in value as reasonably possible to the home and furnishings located at 1745 Vista Street, Los Angeles, California, and which were sold by said trustee on or about the year 1946, or to provide Irene Marie Charters Yeakel with a sum sufficient to rent a furnished home of the value, approximate quality and desirability as the residence at 1745 Vista Street, Los Angeles, California which was previously occupied by Irene Marie Charters Yeakel, and sold by the Trustee as aforesaid."
 "2. It is further ordered that Paragraph Fifth (A)(2) of the Last Will and Testament of Spencer H. Charters and Paragraph Fifth (A)(2) of the Decree of Distribution made in this cause be interpreted as a direction to the Trustee that Irene Marie Charters Yeakel should receive a minimum of $200.00 per month, including benefits from insurance policies received from sources outside the Trust Estate as well as income of the Trust Estate. *234 "
 "3. It is further ordered that petitioner utilize any income remaining after it has provided the minimum of $200.00 per month including insurance payments received by Irene Charters Yeakel outside of the Trust to meet its obligation to provide for Irene Marie Charters Yeakel's reasonable support, care and comfort."
 "4. The intent of Spencer H. Charters as found from a reading of his Last Will and the Trust therein contained, and upon analysis of the facts surrounding execution of said Will, is interpreted to mean that excess income, if any, after petitioner has carried out the terms of this Order, shall not be accumulated but shall be distributed to Irene Marie Charters Yeakel."
 From these orders the trustee and Laura Hoerner appeal. No briefs were filed on behalf of Laura Hoerner. [1] It is settled, contrary to respondent's contention, that the trustee is entitled to appeal. (Estate of Ferrall, 33 Cal.2d 202, 204-206 [200 P.2d 1, 6 A.L.R.2d 142].)
 The trustee first contends that the probate court was without jurisdiction to consider the matter of the sale of the residence on the ground that this sale was approved in the court's order settling the third account current, and since it has long since become final, it is not subject to collateral attack. Irene contends that since she was a minor 16 years old when the third account current was approved and her estate was under the guardianship of the trustee, and since the trustee did not list her right to occupy the residence in its inventory of the assets of the estate or obtain authority of the court for its sale, she was not bound by the order approving the account, which deprived her of the right to use and occupy the residence.
 [2] Once a decree of the probate court settling an account of a trustee becomes final, it is conclusive, in the absence of extrinsic fraud, on all parties interested in the estate. (Prob. Code, 1123; Security First Nat. Bank of Los Angeles v. Superior Court, 1 Cal.2d 749, 755 [37 P.2d 69]; Ringwalt v. Bank of America, 3 Cal.2d 680, 685 [45 P.2d 967]; In re McLellan v. McLellan, 17 Cal.2d 552, 554 [110 P.2d 1034]; Willson v. Security First Nat. Bank, 21 Cal.2d 705, 713 [134 P.2d 800].) [3] A court has inherent power to set aside a decree for extrinsic fraud (Cross v. Tustin, 37 Cal.2d 821, 825 [236 P.2d 142]) when a party has been prevented from fully presenting his case and there has therefore been no adversary trial of the issue. (Bacon v. Bacon, 150 Cal. 477, 491 [89 P. 317]; Howard v. Howard, 27 Cal.2d 319, 321 *235 [163 P.2d 439].) [4] "The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment. ... This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case." (Jorgensen v. Jorgensen, 32 Cal.2d 13, 18 [193 P.2d 728].) Thus, the question arises at the outset whether the foregoing rule applies, when a trustee that is also the guardian of the estate of a minor beneficiary of a trust (who is not otherwise represented) seeks a final settlement of an account current after selling a trust asset in which the minor beneficiary has an interest.
 In Fisher v. Banta, 66 N.Y. 468, the same person appeared at a final accounting as the representative of two estates, that of the deceased and that of his beneficiary. After the decree had become final, legatees of the deceased beneficiary, who had not been made parties to the final accounting, sought to set it aside. The court stated:
 "It is doubtless true that a decree made on the settlement of Albert Banta's estate, to which the executor of Charles ... was a party, would, under ordinary circumstances, in the absence of fraud ..., conclude them [legatees of Charles' estate]. But the defendant Hubbell was the representative of both estates. So far as the plaintiffs were concerned, the accounting was a proceeding instituted by Hubbell as representative of one estate against himself as the representative of the other estate. It is a familiar principle that a court of equity will require parties having remote interests to be brought in, when necessary to a complete disposition of the matter in litigation [citation], and this, we think, is a case to which this rule applies, and the ... legatees of Charles ... [should] have been made parties to the accounting. ... They ought not to be concluded by a proceeding instituted by himself [Hubbell], against himself, in which they were interested." (Ibid. at 481.)
 Again in the Matter of Haigh, 125 Misc. 365, 367 [211 N.Y.S. 521], under similar facts, the court held that unless persons interested in the deceased beneficiary's estate were cited, the final decree of the accounting party representing both estates was not conclusive upon them. The rule of the Fisher case was subsequently codified in New York. (Surrogate's Court Act, 262(10), Gilbert-Bliss, Civil Practice of New York anno., Book 13B, 3d ed.) The purpose of this *236 rule is to prevent a person's escaping liability by taking advantage of his dual relationship in accounting to himself. (Matter of Massimino, 143 Misc. 119, 121 [256 N.Y.S. 32]; see also Estate of Clark, 203 Iowa 224 [212 N.W. 481].) "[L]ogic demands that an accounting party be not permitted in another representative capacity to stand between himself and the ultimate beneficiary." (Re Brockway's Will, 111 N.Y.S.2d 849, 857.)
 [5] The reasoning of these cases applies here. After a sale of a trust asset in which Irene had an interest, the third account current was rendered to the court and approved, with the trustee accounting to itself as guardian. Thus, since the trustee occupied a dual relationship, and Irene was not otherwise represented, she was deprived of the opportunity to present her claims to the court. There being no adversary trial or decision of the issue, the order settling the trustee's third account current is not binding on her, and the probate court therefore had jurisdiction to inquire into it. [6] Having jurisdiction of the controversy between the trustee and the beneficiary of the trust under section 1120 of the Probate Code, the court could "bring to its aid the full equitable and legal powers with which as a superior court it is invested." (Guardianship of Cornaz, 8 Cal.2d 347, 359 [65 P.2d 784]; Schleyen v. Schleyen, 43 Cal.2d 361, 371-374 [273 P.2d 879]; Estate of Eilert, 131 Cal.App. 409, 414-417 [21 P.2d 630].)
 The trustee contends (1) that the right to occupy the residence was given only for the period Irene was under the care of a guardian; (2) that once Irene and her guardian vacated the residence, the right to occupy was lost and could not be reclaimed; and (3) that once the right to occupy was lost, the trustee could sell the residence.
 [7] In support of the first proposition the trustee relies on the use of the word "and" with reference to the right to occupy ["The Trustee shall permit Irene ... and her guardian ... to use and occupy my residence for so long a time as they may desire ..." (italics added)] as contrasted with the use of the word "or" with respect to the furniture and furnishings. ["My ... daughter or her guardian ... shall so long as she or they desire, have the use ... of the household furniture and furnishings. ... (Italics added)]. In view of the fact that Irene was only 10 years old at the date the will was executed and only 11 years old at the date of the decree of distribution, she would necessarily be under the care of a guardian and could not *237 decide for herself to occupy the residence. The decision to occupy would necessarily be made by her guardian, even if the decree had not referred to the guardian and had provided that Irene could occupy the residence for "so long a time as she may desire." The decree made it clear that during her minority the decision to occupy was not Irene's alone but that of her guardian. When her minority and the guardianship of her person were over, there would no longer be any need for the care of a guardian or any necessity of a guardian to occupy the residence with her and therefore no longer any need for a guardian's decision as to occupancy. Thus, if Irene and her guardian had occupied the residence during the whole period of her minority and it was Irene's desire thereafter to continue to occupy it, we have no doubt that she would have had the right to do so. The decree cannot reasonably be construed as terminating the right to occupy the residence when she reached 21 and requiring her then to vacate it. The obvious purpose of the provision giving the right to occupy was to provide a home for Irene. If the right to occupy the residence was to be limited to her minority, the decree would have plainly said so and not left the limitation to a vague inference to be drawn from a meticulous comparison of the use of such words as "and," "or," "they," and "she.""
 [8] The second of the foregoing propositions assumes that the occupancy must be continuous, and that once Irene and her guardian vacated the residence they lost the right again to occupy it. The right to occupy, however, was for "so long a time as they may desire" and there is nothing in the decree to indicate that their desire to occupy could be expressed only once and not for "so long a time" any time they desired. Thus, if the guardian had decided that it was in the best interest of Irene for her and Irene to occupy the residence during the time Irene was in grade school and then for Irene to go to a girls' school, we do not believe that the decree could reasonably be construed as denying them the right thereafter to return to the residence. A disinterested guardian of her estate would have protected the right to occupy the residence during Irene's absences therefrom and made reasonable arrangements with the trustee for the rental thereof when the duration of such absences justified such rental. As noted above, the obvious purpose of the decree was to provide a home for Irene for so long a time as she desired and not simply for her minority or for one uninterrupted time only. *238 [9] Since Irene and her guardian had the right during her minority to occupy the residence for so long a time any time they desired and since Irene had the right to occupy it so long as she desired on the termination of her guardianship, the trustee had no authority to defeat that right by selling the residence. The court's order number (1) that the trustee purchase a home with suitable furnishings for Irene or provide her with a sum sufficient to rent such a home must therefore be affirmed.
 [10] We agree with the trustee's contention that the court's orders number (2) and number (3) that the $200 monthly payment is only the minimum authorized for Irene's support and that any income in excess of that amount must be used for her support are contrary to the express provisions of the decree of distribution and must therefore be reversed. (Estate of Van Deusen, 30 Cal.2d 285, 295 [182 P.2d 565].) The decree, incorporating the language of the will, provides:
 "From and after the date upon which Irene ... shall attain the age of Twenty-one (21) years, the Trustee shall pay to said Irene ..., during her lifetime or until the termination of the Trust Estate, such sum or amount monthly which, when added to the payments which she may receive from any insurance policies on the life of deceased, shall amount to a monthly income of Two Hundred Dollars ($200.00). If the income available for distribution is not sufficient to make the aforesaid monthly payments the Trustee shall use such part of the principal as may be necessary to make such monthly payments."
 This provision plainly provides for $200 per month, no more and no less, and cannot reasonably be construed as providing that income in excess thereof shall be used for Irene's support. If any additional sum is to be paid to Irene, it is to be paid under the provisions of the decree that
 "If the payments from the Trust to which Irene Marie Charters, daughter of deceased, may be entitled after she shall have attained the age of Twenty-one (21) years shall, in the discretion of the Trustee, be insufficient to provide her with reasonable support, care and comfort, the Trustee may pay to, apply or expend for her use and benefit so much of the principal up to and including the whole thereof as the Trustee may deem advisable." (Italics added.)
 Anything paid pursuant to this provision would be in the absolute discretion of the trustee:
 "All discretions conferred upon the Trustee shall, unless specifically limited, be absolute and their exercise conclusive *239 on all persons interested in the Trust. The enumeration of certain powers of the Trustee shall not limit its general powers, the Trustee being hereby vested with and having as to the trust estate and in the execution of the trust all the rights, powers and privileges which an absolute owner of the same property would have." (Italics added.)
 [11] Thus, as this court stated in Estate of Ferrall, 41 Cal.2d 166, 173 [258 P.2d 1009]: "An absolute discretion, exercised in good faith by a trustee, cannot be controlled by a court on considerations going to the soundness of the discretions exercised." The court could not interfere to review the action of the trustee in the absence of pleadings, proof, and findings of fraud, bad faith, or abuse of discretion. (Estate of Ferrall, supra, pp. 170-173.) There are no such pleadings, proof, or findings herein.
 [12] We also agree with the trustee's contention that order number (4) that excess income shall be distributed to Irene, is contrary to the express provisions of section 733 of the Civil Code and must therefore be reversed. (See Estate of LeFranc, 38 Cal.2d 289, 299-301 [239 P.2d 617].)
 Section 733 of the Civil Code provides:
 "When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation or of the ownership during the continuation of which the income is undisposed of, and no valid direction for its accumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest."
 The decree contains no express direction for the accumulation of income. The provisions thereof that the principal may be used if the net income available for distribution is insufficient for Irene's support during her minority, or to meet the $200 monthly payments thereafter, or for the support of the deceased wife's mother, and that the trustee may pay taxes and costs of administering the trust out of principal or income, would indicate that it was not contemplated that income was to be accumulated, for normally there would be no expenditures from principal until income had been expended. Thus, even though the court correctly concluded that there was no express or implied direction for the accumulation of undistributed income, it erred in ordering its distribution to Irene, for section 733 plainly provides that the "income belongs to the persons presumptively entitled to the next eventual interest." Irene is the person presumptively entitled to the next eventual interest only as to $15,000, *240 the sum of the installments of $5,000 that she is to receive when she attains the ages of 30, 35, and 40, and to her belongs only that proportion of the accumulated income as $15,000 bears to the value of the total trust estate. The remainder was given to Irene's issue, and as to that they were the persons presumptively entitled to the next eventual interest. If Irene died leaving no issue the trust estate was to be distributed two-fifths to Francis Moeller and three- fifths to Horace T. Charters, Charles T. Charters, and Laura Hoerner as provided in paragraph (C) of the will. (See note 1, supra.) It is immaterial that Irene had no issue at the time of the court's orders, for the rights of those unborn are entitled to protection as well as those of the living. Furthermore, although the fact that a child was born to Irene on January 26, 1955, does not appear in the record, our attention was called to it in the brief filed by the guardian ad litem. Since the court's orders will operate in futuro (cf. Cal-Dak Co. v. Sav-On Drugs, Inc., 40 Cal.2d 492, 496-497 [254 P.2d 497]) that fact may be considered in protecting the rights of the child in the trust estate. (See First Nat. Bank v. Henderson, 101 Cal. 307, 309-311 [35 P. 899]. Distribution of all of the undistributed income to Irene pursuant to the court's orders would defeat the right of that child under the express provisions of section 733 of the Civil Code.
 Order number (1) is affirmed. Orders number (2), number (3), and number (4) are reversed. The trustee shall bear the costs of this appeal.
 Gibson, C.J., Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.
 "(A) (1) Until my daughter, Irene ... attains the age of Twenty-one (21) years, my Trustee shall distribute to her, or for her use and benefit, such sums or amounts in monthly installments as may be necessary for her proper support, maintenance and education, using therefor so much of the principal of the Trust Estate as may be necessary if the net income available for distribution is insufficient."
 "(2) From and after the date upon which my daughter, Irene ... shall attain the age of Twenty-one (21) years, my Trustee shall pay to my said daughter, during her lifetime or until the termination of the Trust Estate, such sum or amount monthly which, when added to the payments which she may receive from any insurance policies on my life, shall amount to a monthly income of Two Hundred Dollars ($200.00). If the income available for distribution is not sufficient to make the aforesaid monthly payments my Trustee shall use such part of the principal as may be necessary to make such monthly payments."
 "(3) My Trustee shall permit my daughter, Irene ..., and her guardian or such person as may be entrusted with her care, to use and occupy my residence at 1745 North Vista Street, Los Angeles, California, for so long a time as they may desire, without payment of rent and without deduction from any of the payments herein provided. In connection with such use, my said daughter or her guardian or such person as may be entrusted with her care, shall, so long as she or they desire, have the use, without charge, of the household furniture and furnishings, silver, books, pictures, paintings, works of art, and bric-a-brac which may be located in said residence."
 "(4) When and at such time as my daughter, Irene ..., shall cease to occupy my home at the above address the Trustee shall make such disposition of the personal property used in connection with said home as it may deem advisable."
 "(5) Should any of my jewelry become a part of the Trust Estate the same shall be distributed to my daughter, Irene ..., at such time as, in the opinion of the Trustee, she is qualified to receive and care for the same."
 "(6) In addition to the payments hereinabove provided for my daughter, Irene ..., my Trustee shall pay to her the sum of Five Thousand Dollars ($5000.00) from the principal of the Trust Estate on the date upon which she attains the age of Thirty (30) years, and an additional sum of Five Thousand Dollars ($5000.00) from the principal of the Trust estate on the date upon which she attains the age of Thirty-five (35) years, and an additional sum of Five Thousand Dollars ($5000.00) from the principal of the Trust Estate on the date upon which she attains the age of Forty (40) years of age."
 "(7) My Trustee shall distribute to Amelia Meyers, my deceased wife's mother, or pay for her use and benefit, such sums or amounts in monthly installments as may be necessary for her proper support and maintenance during her lifetime, using therefor so much of the principal of the Trust Estate as may be necessary if the net income available for distribution is insufficient. ..."
 "(C) This Trust shall continue until and shall cease upon the death of my daughter, Irene .... Upon such termination the entire Trust Estate, including principal and any undistributed income, shall, after payment of any expenses of last illness and funeral of my said daughter, be distributed by right of representation to the issue of my said daughter. ..."
 "Should my daughter ... die leaving no issue then the entire Trust Estate, including principal and any undistributed income, shall, after payment of any expenses of last illness and funeral for my said daughter be distributed as follows:"
 "(1) Two-fifths (2/5) thereof to Francis Moeller, or to his issue by right of representation should he not then be living;"
 "(2) Three-fifths (3/5) thereof in equal shares to my brothers, Horace T. Charters and Charles T. Charters, and my sister, Laura Hoerner, or to the survivors or survivor of them should any of them be not then living, or, if none of them be then living, then to Francis Moeller, or to his issue by right of representation should he not then be living."
 After setting forth various "powers and discretions" vested in the trustee, the decree of distribution also provided: "All discretions conferred upon the Trustee shall, unless specifically limited, be absolute and their exercise conclusive on all persons interested in the Trust. The enumeration of certain powers of the Trustee shall not limit its general powers, the Trustee being hereby vested with and having as to the trust estate and in the execution of the trust all the rights, powers and privileges which an absolute owner of the property would have."
 "That on or about the 16th day of July, 1946 the Trustee of decedent's estate under said Last Will and Testament sold the real property at 1745 North Vista Street, Los Angeles, California. That said sale was made without notice to the guardian of said minor's estate, and said guardian did not file its petition with the Court for authority for it to sell said estate of the minor. That by reason of said sale, the Trustee obtained $25,000.00, which sum was then made a part of the corpus of said Trust and has since that date and does now make up a portion of the said Trust Estate."
 "The Estate ... was of a value of $94,308.77 as of the date of distribution based upon the appraised value thereof."
 "That the will of the above-named deceased, incorporated in the Decree of Distribution creating the Trust Estate, contains no express provision for the accumulation of undistributed income and no provision for the payment of income as hereinafter mentioned to any beneficiary except Irene ..."
 "That the Court interprets the provisions of the Trust covering the use of said home as a direction to the Trustee to permit Irene to use and occupy said property during the whole of her natural life if she so desired, and that during such period the Trustee is required to bear the expense of said property and the payment of taxes thereon."
 "That it was the duty of the Guardian to secure and maintain for the minor any property rights to which she may have been entitled and it appears to the Court that no question of this right, being namely, the right to occupy said residence, was reported to the Court in the Guardianship proceedings, nor was such right on the part of the minor reported to the Court by the Trustee in connection with the sale thereof."
 "That permission of the Court in the Guardianship matter was not sought by the Guardian to relinquish the said right of occupancy on the part of Irene."
 "That it is the opinion of this Court that had the relinquishment of the right of the minor to occupy said residence been submitted to the Court that the Court would not have given its permission for such relinquishment without adequate consideration given to the Ward."
 "That the sum of $45.48, being the difference between the amount received by Irene from insurance policies on the life of the above-named deceased, and the sum of $200.00 per month is not a maximum payment but is the minimum amount required to be paid by the Trustee in cash for the support, care and comfort of Irene and the Trustee is entitled, and should be instructed to expend any additional portion of the income, up to the whole thereof, as shall be necessary to meet this obligation."
NOTES
[fn. 1] 1. "Fifth: In the event my daughter, Irene Marie Charters, survives the final distribution of my estate, I give, devise and bequeath the residue of my estate, real and personal, wherever situated, hereinafter termed the 'trust estate,' to Security-First National Bank of Los Angeles, a national banking association, in trust, to hold, manage and distribute as hereinafter provided:
[fn. 2] 2. After setting forth the foregoing provisions of the will creating the trust, the decree of distribution provided: "If the payments from the Trust to which Irene Marie Charters, daughter of deceased, may be entitled after she shall have attained the age of Twenty-one (21) years shall, in the discretion of the Trustee, be insufficient to provide her with reasonable support, care and comfort, the Trustee may pay to, apply or expend for her use and benefit so much of the principal up to and including the whole thereof as the Trustee may deem advisable."
[fn. 3] 3. "That on February 5, 1943 the Security-First National Bank of Los Angeles, a national banking association, was appointed guardian of the Estate of Irene Marie Charters (then a minor); that said guardian presented its inventory of the assets of said minor's estate; that the testamentary trust of Spencer H. Charters, deceased, under paragraph Fifth (A)(3) of the Last Will and Testament of Spencer H. Charters, gave the right to the use and occupancy of certain residence property located at 1745 North Vista Street, Los Angeles, California to Irene; that said right was in the nature of a Life Estate and that said right and/or estate was not listed in said inventory as an asset of said minor's estate.