[Ciy. No. 36005. Second Dist., Div. Five. June 30, 1970.]

LUCY M. NEUBRAND et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROSAMONDE D. LYTLE et al., Real Parties in Interest.

312

[REDACTED]

**COUNSEL**

Schwartz & Dreifus and Jordan A. Dreifus for Petitioners.

No appearance for Respondent.

Hill, Farrer & Burrill, E. Mac Amos, Jr., Stanley E. Tobin and Harry L. Hathaway for Real Parties in Interest.

**OPINION**

SELBER, J.[*] — Decedent, Kitty M. Matthiessen, died on December 27, 1967, leaving neither spouse, issue, nor parents. Two nieces of decedent, Rosamonde D. Lytle and Jane D. Daley, were appointed joint administratrices of the estate, it being alleged that decedent died intestate. On November 22, 1968, pursuant to petition of said joint administratrices, respondent court made its order settling the first account and report of the administratrices, made an allowance on account of statutory fees, and entered judgment for partial distribution. It is recited in said judgment that "Due and legal notice of the hearing of the amended petition has been regularly given for the period and in the manner required by law and the previous order of this Court." Such partial distribution, being in the total amount of $214,614.73, was made to nieces (including said administratrices) and nephews of the decedent, children of her previous deceased sisters, who were the persons named by the administratrices as "the sole surviving heirs of the decedent."

---

[*]Assigned by the Chairman of the Judicial Council.

[REDACTED]

Thereafter, in October 1969, relatives of Frederick W. Matthiessen, Jr., the deceased husband of Kitty, filed in said probate proceedings, a motion to vacate the judgment of November 22, 1968, upon grounds of extrinsic fraud. It is alleged that movant Lucy M. Neubrand is the daughter of said Frederick W. Matthiessen, Jr., by a previous marriage, and that movant Carole M. Horan is his granddaughter, being the daughter of the deceased son of Frederick W. Matthiessen, Jr., by said previous marriage. It is alleged that the motion is made by said movants in their own behalf and in behalf of all other children and descendants of said Frederick W. Matthiessen, Jr., similarly situated as movants.[1] It is therein alleged that all or substantially all of the property, or the proceeds of money and property, which was either the community property of decedent and her previously deceased spouse, Frederick W. Matthiessen, Jr., or was the separate property of said previously deceased spouse, all of which came to decedent by one of the methods listed in sections 228 or 229 of the Probate Code; that movants are each entitled to their rightful share of said property in accordance wth said code sections.

The claim of extrinsic fraud is based upon the alleged knowledge of the joint administratrices of the existence, identities, addresses, and relationships of movants to Frederick W. Matthiessen, Jr., and to Kitty M. Matthiessen and of their rights under section 228 and 229 of the Probate Code, that said administratrices wilfully and knowingly concealed and withheld such facts from the court, and that they in like manner failed to give notice of the pendency of this probate proceeding and of the petition for partial distribution, or of the judgment of November 22, 1968, to movants and all other children or descendants of Frederick W. Matthiessen, Jr., that "by said acts and omissions said joint administratrices did thereby commit extrinsic fraud upon the court and upon movants and other children and descendants of Frederick W. Matthiessen, Jr., similarly situated as movants. The Judgment and Order referred to hereinabove were thereby caused to be made, filed and entered by reason of and solely by reason of such extrinsic fraud on the part of said administratrices." Movants asked, inter alia, that the judgment of November 22, 1968 (as amended by order of December 6, 1968) be vacated and declared null and void, that the court order that the recipients of payments made pursuant to said judgment for partial distribution be ordered to return all of said money and property to the custody and possession of the court, and that the court make and

---

[1]The only such other descendant who is mentioned in the motion is Frederick W. Matthiessen III, the son of Frederick W. Matthiessen, Jr., who died on October 11, 1968, subsequent to the death of Kitty M. Matthiessen. It is alleged that appropriate representatives of his estate will take steps to intervene in said proceeding.

enter a declaratory judgment deciding and determining the rights, duties and liabilities of all the parties in the premises.

Objections to the motion were filed by real parties in interest herein (the distributees) upon the ground that the judgment of November 22, 1968, had become final, and that the probate court is not vested with power to void its own orders or decrees which have become final, reliance being placed upon the decision in *Security-First Nat. Bank* v. *Superior Court* (1934) 1 Cal.2d 749 [37 P.2d 69].

The motion to vacate was denied by order of respondent court, signed and filed on January 8, 1970, as follows: "IT IS HEREBY ORDERED: (1) That the . . . . Motion to Vacate Orders be and the same is hereby denied on the sole ground that this Court sitting in Probate lacks jurisdiction to entertain and consider the same; and (2) That this decision . . . . is without prejudice to the Movants seeking the same relief as sought therein by means of an appropriate civil action."

On January 9, 1970, Florence M. Hardeman, as administratrix of the estate of Frederick W. Matthiessen III, deceased, having been issued letters of administration on January 6, 1970, intervened in said proceedings by filing therein a motion to vacate the order of January 8, 1970. This motion was denied on January 26, 1970, and she is one of the petitioners herein.

On January 6, 1970, petitioners filed and served a petition to determine heirship in said probate proceedings.[2] Real parties in interest filed their statement of interest therein on January 15, 1970, in which it is stated that said "claimants as the sole heirs at law of decedent are entitled to all of the estate of the decedent, wherever situated, now known or wherever discovered, subject to probate herein, except with respect to certain specific bequests which this court may adjudge to be valid, in the Last Will and Testament of Kitty M. Matthiessen, dated August 1, 1938, which Will has just recently been filed with this court and which will in due course be presented for probate herein."

Also, on January 6, 1970, petitioners filed in the Los Angeles County Superior Court an independent action (No. 968-165), naming as defendants, among others, all of the real parties in interest herein. The complaint in this action contains allegations similar to those set forth in the motion to vacate filed on October 30, 1969, in the probate proceeding, and prays for similar relief. The summons and complaint have been served on Rosa-

---

[2]It is stated in the petition filed herein that "there remains in the estate undistributed a sum or value of not less than $70,000, the distribution of which is in issue upon said Petition to Determine Heirship."

monde D. Lytel and Jane D. Daley, who are residents of California, but service has not been made upon the remaining defendants who reside in the States of Kansas and Washington.

Petitioners herein seek a writ of mandate to compel respondent court, sitting in probate, to vacate and annul the orders of January 8, 1970, and January 26, 1970, and to exercise its jurisdiction and hear and determine on the merits their motion to vacate the judgment of November 22, 1968.

The sole question presented is whether respondent court has jurisdiction to vacate its prior decree, which has become final, on grounds of extrinsic fraud. The question, in turn, requires a determination as to whether *Security-First Nat. Bank* v. *Superior Court, supra,* 1 Cal.2d 749, still states the law in that respect. The present case is very similar to *Security* in that both cases involve a motion addressed to the court sitting in probate in the matter of the estate to vacate orders or decrees which had become final, upon the ground of extrinsic fraud resulting from failure to give personal notice.

In the *Security* case, the trial court, sitting in probate, had entered an order vacating its prior orders settling and approving the first nine accounts of the trustee of a testamentary trust, which orders had long since become final. The motion to vacate was made by a remainderman under the trust provisions and the decree of distribution upon the ground that the orders settling the accounts were void because the trustee had failed to include in its petition for settlement the names and addresses, and to give notice to, the beneficiaries as required by statute; and on the further ground that the petition in each instance falsely stated that Sallie B. Wolcott (the income beneficiary) was the sole beneficiary when the trustee in fact knew that movant was a beneficiary. The Supreme Court, in annulling the order vacating the prior orders, says: "Unless the orders settling the first nine accounts current are shown to be void upon the face thereof, the probate court had no jurisdiction to vacate them on a collateral attack. A judgment or order is determined to be void upon its face when it is shown to be void by an inspection of the judgment-roll." (Pp. 752-753.) The court points out that the same presumptions as to the validity of judgments and orders of any court of general jurisdiction are applicable to the final orders and decrees of a court sitting in probate, and states (p. 755): "Therefore a subsequent application in the administration of the same estate to set aside a previous order entered in the course of probate jurisdiction after the same has become final is a collateral attack, and unless the order is void on its face, it may not on such attack be set aside." After holding that the orders in question were not void, the court states (pp. 757-758): "Finally the respondents contend that the motion to vacate the orders

may be considered as addressed to the equity powers of the probate court and that the respondent court had jurisdiction to set aside said orders on the ground that extrinsic fraud had been practiced in said proceedings. The probate court has no general equity jurisdiction. Its general jurisdiction is confined to the settlement of the estates of deceased persons. [Citations.] It has the power, however, to apply equitable and legal principles in aid of its functions as a probate court. [Citations.] Consequently on a collateral attack the probate court is not vested with power to avoid its own orders or decrees which have become final on the ground that extrinsic fraud has been practiced in obtaining the order or decree. Such power is appropriately vested in a court having general equity jurisdiction."

Petitioners contend that the *Security* case was impliedly overruled "by the inconsistent holding of the Supreme Court in *Estate of Charters,* 46 Cal.2d 227 [293 P.2d 778]", and that in the later case of *Estate of Auslender,* 53 Cal.2d 615, 626 [2 Cal.Rptr. 769, 349 P.2d 537], the court upheld the jurisdiction of the probate court to vacate a prior order which had been obtained by extrinsic fraud, contrary to the holding in the *Security* case, making particular reference to a footnote therein where the court stated (footnote 1, 53 Cal.2d at p. 626): "It is true, as contended by Harry, that *Security-First Nat. Bank* v. *Superior Court,* 1 Cal.2d 749 [37 P.2d 69], holds that a probate court has no power to set aside its own orders or decrees which have become final, on the ground that extrinsic fraud has been practiced in obtaining such orders or decrees. However, insofar as that case holds that a probate court cannot set aside its prior order, which order has become final, on the ground of extrinsic fraud, it appears to have been impliedly overruled by *Estate of Charters,* 46 Cal.2d 227 [293 P.2d 778]."

■ It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry, by the court which rendered the judgment or made the order. (*Estate of Estrem,* 16 Cal.2d 563, 571 [107 P.2d 36]; *Hayashi* v. *Lorenz,* 42 Cal.2d 848, 851 [271 P.2d 18]; *Myers* v. *Washington,* 211 Cal.App.2d 767, 771 [27 Cal.Rptr. 778].) No contention is made by petitioners, and it does not appear, that the judgment in question is void upon its face. Nor was the motion here made or based on section 473 of the Code of Civil Procedure. It was addressed to the equity power of respondent court based upon extrinsic fraud.

■ Where a judgment has been obtained through extrinsic fraud it may be set aside, though long since final, either by an independent suit in equity (*Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 558 [305 P.2d 20]),

or, where the court that rendered the judgment possesses a general jurisdiction in law and in equity, by means of a motion addressed to that court. (*Olivera* v. *Grace,* 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328]; *McCreadie* v. *Arques,* 248 Cal.App.2d 39, 44 [56 Cal.Rptr. 188]; *Hickey* v. *Roby,* 273 Cal.App.2d 752, 768 [77 Cal.Rptr. 486]; 3 Witkin, Cal. Procedure (1954) § 68-69, pp. 2121-2122.)

■ While the superior court sitting in probate is a court of general jurisdiction, its jurisdiction and powers are wholly statutory. (1 Witkin, Cal. Procedure (1954) Jurisdiction, § 143, p. 405; 20 Cal.Jur.2d, §§ 19-20, pp. 43-44.) " '[T]he proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory.' (11 Cal.Jur., pp. 248-249, sec. 34.)" (*McPike* v. *Superior Court,* 220 Cal. 254, 258 [30 P.2d 17].) ■ As stated in *Fisher* v. *Superior Court,* 23 Cal.App.2d 528, 534 [73 P.2d 892]: "Under our codes probate proceedings are entirely separate and distinct from actions either at law or in equity. The fact that we have had one form of action in this state relates to legal and equitable actions but has no bearing on probate proceedings. Although one court has jurisdiction over all these matters an entirely different procedure has been provided by statute for bringing a matter within its probate jurisdiction." Illustrative of the above principles are *Texas Co.* v. *Bank of America etc. Assn.,* 5 Cal.2d 35, 39 [53 P.2d 127]; *Estate of McLellan,* 8 Cal.2d 49, 55-56 [63 P.2d 1120]; *Estate of Wise,* 34 Cal.2d 376, 381 [210 P.2d 497]; *Estate of Schloss,* 56 Cal.2d 248, 253 [14 Cal.Rptr. 643, 363 P.2d 875]; *Auslen* v. *Superior Court,* 58 Cal.2d 820, 823 [27 Cal.Rptr. 8, 377 P.2d 72]; *Estate of Bissinger,* 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; *Vigne* v. *Superior Court,* 37 Cal.App.2d 346, 351 [99 P.2d 589].)

■ The superior court sitting in probate has no general equity jurisdiction. (*Security-First Nat. Bank* v. *Superior Court, supra,* 1 Cal.2d 749, 757; *Estate of Reade,* 31 Cal.2d 669, 672 [191 P.2d 745]; *Estate of Schneider,* 62 Cal.App.2d 463, 465 [145 P.2d 90]; *Estate of Nielsen,* 217 Cal.App.2d 147, 149 [31 Cal.Rptr. 424]; 20 Cal.Jur.2d, sec. 25, p. 53.) However, it does have the power to apply equitable principles in aid of its functions as a probate court. ■ As stated in *Guardianship of Cornaz,* 8 Cal.2d 347, 359 [65 P.2d 784]: "The probate court, while sitting in matters of probate, is a court of general jurisdiction, and in

determining any questions arising in the administration of an estate which it is authorized to decide may bring to its aid 'the full equitable and legal powers with which as a superior court it is invested.' (*Estate of Bell,* 168 Cal. 253 [141 Pac. 1179]; . . ." See also, *Security-First Nat. Bank* v. *Superior Court, supra; Estate of Bissinger, supra,* pp. 764-765; *Estate of Reade,* 31 Cal.2d 669, 672 [191 P.2d 745]; *Estate of Eilert,* 131 Cal.App. 409, 416 [21 P.2d 630]; *Estate of Baldwin,* 21 Cal.2d 586, 594 [134 P.2d 259]; *Estate of Dobbins,* 36 Cal.App.2d 536, 539 [97 P.2d 1051].)

In the light of the above well-settled rules, we must determine the effect of *Estate of Charters* (1956) 46 Cal.2d 227 [293 P.2d 778], and *Estate of Auslender* (1960) 53 Cal.2d 615 [2 Cal.Rptr. 769, 349 P.2d 537]. In doing so, we must be guided by the principle that the decision in each must be construed with relation to the particular matter before the court for adjudication. (See, *Tronslin* v. *City of Sonora,* 144 Cal.App.2d 735, 738 [301 P.2d 891].)

In *Estate of Charters,* the trustee of a testamentary trust filed a petition for instructions as to what to do with accumulated income in the trust. Said trustee was also the guardian of the estate of the income beneficiary of the trust. Under the trust, said income beneficiary was given the right to occupy the family home for as long as she desired. After she moved from the home, the trustee sold it and the report of this sale was contained in the trustee's third account which was approved. This order had become final when the petition for instructions came on for hearing. The trial court, inter alia, ordered the trustee to either purchase a home for the occupancy of said beneficiary or to provide her with a sum sufficient to rent a furnished home of value, approximate quality and desirability as the residence which was sold. The trustee contended upon appeal that the probate court was without jurisdiction to consider the matter of the sale of the residence on the ground that this sale was approved in the court's order settling the third account current, and since it long since had become final, it was not subject to collateral attack. Irene, the income beneficiary, contended that since she was a minor 16 years old when the third account current was approved and her estate was under the guardianship of the trustee, and since the trustee did not list her right to occupy the residence in its inventory of the assets of the estate or obtain authority of the court for its sale, she was not bound by the order approving the account, which deprived her of the right to use and occupy the residence. The Supreme Court states (pp. 234-235): "Once a decree of the probate court settling an account of a trustee becomes final, it is conclusive, in the absence of extrinsic fraud, on all parties interested in the estate . . . . A court has inherent power to set aside a decree for extrinsic fraud [citation] when a

party has been prevented from fully presenting his case and there has therefore been no adversary trial of the issue. [Citations.] 'The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment . . . . This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' [Citations.] Thus, the question arises at the outset whether the foregoing rule applies, when a trustee that is also the guardian of the estate of a minor beneficiary of a trust (who is not otherwise represented) seeks a final settlement of an account current after selling a trust asset in which the minor beneficiary has an interest." In affirming the order of the trial court, it is stated: "After a sale of a trust asset in which Irene had an interest, the third account current was rendered to the court and approved, with the trustee accounting to itself as guardian. Thus, since the trustee occupied a dual relationship, and Irene was not otherwise represented, she was deprived of the opportunity to present her claims to the court. There being no adversary trial or decision of the issue, the order settling the trustee's third account current is not binding on her, and the probate court therefore had jurisdiction to inquire into it. Having jurisdiction of the controversy between the trustee and the beneficiary of the trust under section 1120 of the Probate Code, the court could 'bring to its aid the full equitable and legal powers with which as a superior court it is invested.' [Citations.]"

*Estate of Auslender, supra,* 53 Cal.2d 615, so far as pertinent here, involved an appeal from an order settling the first account of a coadministrator. In settling this account, the trial court rejected the administrator's claim that he was not required to account for the funds and property which by two judgments had been decreed to belong to certain corporations. The trial court found that these judgments, obtained in two separate actions against the estate in the superior court, in the exercise of its general jurisdiction, had been procured by the fraud of both coadministrators; that the two judgments were entered upon the stipulation of the defendant coadministrators when they knew that the estate had a factually supported and meritorious defense to the actions; that it was their duty as coadministrators to present that defense; and that their failing to do so constituted fraud. The court further found that at the time of decedent's death he had been the sole legal and equitable owner of all the shares of stock of both corporations, that each was the *alter ego* of decedent, and that therefore the separate entity of each corporation, for the purpose of accounting, was to be wholly disregarded and the activities, assets and liabilities of each considered and treated as being those of decedent. The court further found that the consent judgments were void because obtained by the

extrinsic fraud of the coadministrators and that each judgment, for the purposes of accounting, was to be disregarded. Upon appeal the action of the trial court was upheld. The coadministrator relied upon the settled rule that a probate court is without power to determine adverse claims to properties of an estate when such claims are asserted by a stranger to the estate. The Supreme Court pointed out that there are court-made exceptions to that rule, and that the circumstances of this case brought it within the exceptions; that under the facts there was requisite privity of said administrator to the estate to permit the court to determine title. The Supreme Court then stated a second theory upon which the action of the trial court could be supported: "This theory is outlined in *Estate of Mc-Sweeney*, 123 Cal.App.2d 787 [268 P.2d 107]. In that case, as in the instant case, the accounting was challenged on the ground of fraud committed by the executor. In both cases the fraud consisted of the conduct of the executor or administrator in permitting a judgment to be entered against the estate, under circumstances where a valid defense was available. In the McSweeney case evidence tending to show this fraud was offered in the superior court sitting in probate but was excluded; in the instant case, the superior court sitting in probate admitted the evidence, and, finding that the administrator had acted fraudulently and in violation of his trust, declared the judgments void and surcharged the administrator's account for the property involved in these judgments. The McSweeney case held that the evidence should have been admitted, stating: 'The appellants were not attacking the quiet title decree as such. They were attacking the accounting proposed by the executors by trying to show that the executors had been derelict in their duty to preserve and to protect the estate by failing to defend the quiet title suit.' (123 Cal.App.2d at p. 794.) This reasoning is directly applicable here. It would indeed be unreasonable to hold, under the circumstances now before us, that a superior court sitting in probate was without power to surcharge the account of an administrator or executor as an incident of its function to settle estates of deceased persons and pass upon final accounts.

"The power of the probate court to void the consent judgments cannot be doubted. As stated in *Guardianship of Cornaz,* 8 Cal.2d 347, at page 359 [65 P.2d 784], 'The probate court, while sitting in matters of probate, is a court of general jurisdiction, and in determining any questions arising in the administration of an estate which it is authorized to decide may bring to its aid "the full equitable and legal powers with which as a superior court it is invested." ' This holding has recently been reaffirmed in *Estate of Charters,* 46 Cal.2d 227, 236 [293 P.2d 778][3]. . . . In the instant case

---

[3]It was at this point in the decision that the footnote, quoted above, made reference to the *Security* case, stating: "However, insofar as that case holds that a probate court

Harry's conduct of the affairs of the estate, as detailed in his account, was brought into question. The court had jurisdiction to determine the controversies over the property involved in the consent judgments. The court below, having determined that Harry acted fraudulently and in violation of his trust, properly, under the rule enunciated in the *Cornaz* and *Charters* cases, invoked its equitable power to set aside the judgments obtained by such fraud. (*Cf. Carney* v. *Simmonds,* 49 Cal.2d 84, 94 [315 P.2d 305].)'' (Pp. 625-626.)

It seems clear that the court in each of said cases—*Charters* and *Auslender*—was engaged in the exercise of its special and limited probate jurisdiction when it made the respective orders in question. In *Charters* the matters complained of came to the attention of the court as a result of a petition for instructions by the trustee on how to deal with the accumulated income in the trust. In *Auslender* the issue of fraud was presented to the court in the course of its settling the account of a coadministrator. Each of these proceedings is well within the accepted functions of a court exercising its probate jurisdiction, and, in determining matters properly before it, the court had the power to apply equitable principles.

In neither *Charters* nor *Auslender* was the *Security* case expressly overruled. We interpret the footnote in *Auslender* as meaning that, insofar as statements in Security may be construed as meaning that *in no case* can a probate court set aside its prior order, which order has become final, on ground of extrinsic fraud, it has been impliedly overruled. That it may do so *in a proper case* now appears to be settled.

When we consider the source of authority under which relief was granted, we find no inconsistency between *Charters* and *Auslender,* and the holding in the *Security* case. *Charters* and *Auslender* were appropriate cases wherein the courts had the power to apply equitable principles in aid of its function as a probate court. ■ In *Security,* as in the present case, the judgment or orders sought to be vacated, not void on the face thereof, were challenged directly by a motion to vacate on grounds of extrinsic fraud, long after they had become final. In the instant case, the court had no such general equity jurisdiction.

■ Petitioner is concerned with evident duplication of time and effort that will be involved in the preparation and trial of two separate proceedings, referring to the independent civil action which has been filed in the superior court, and to the petition to determine heirship pending in the probate proceedings. In the discretion of the court these matters may be

cannot set aside its prior order, which order has become final, on the ground of extrinsic fraud, it appears to have been impliedly overruled by *Estate of Charters,* 46 Cal.2d 227 [293 P.2d 778]."

consolidated for trial of related issues in order to alleviate this concern. (Code Civ. Proc., § 1048; *Estate of Bliss,* 199 Cal.App.2d 630, 640-641 [18 Cal.Rptr. 821].)

The demurrer to the within petition for writ of mandate is overruled. The alternative writ heretofore issued is discharged. The petition for a peremptory writ of mandate is denied.

Stephens, Acting P. J., and Reppy, J., concurred.

A petition for a rehearing was denied July 8, 1970, and petitioners' application for a hearing by the Supreme Court was denied August 26, 1970.