[L. A. No. 27299. In Bank. Feb. 4, 1964.]

Estate of FREDERICK M. BISSINGER, Deceased. SECURITY FIRST NATIONAL BANK, as Trustee, etc., Petitioner and Respondent, v. ROBERT KEITH GRANT, a Minor, etc., et al., Objectors and Appellants.

John G. Grant for Objectors and Appellants.

Lawler, Felix & Hall and John G. Wigmore for Petitioner and Respondent.

SCHAUER, J.—Appellants, hereinafter sometimes called objectors, are two minors appearing by the guardian of their respective estates. As presumptive remainder beneficiaries of a testamentary trust, they appeal from certain parts of an order settling the eighth account current of the trustee. ■
Their purported appeal from certain parts of an order overruling their objections to the account should be dismissed; such order is not one of those listed in section 1240 of the Probate Code and is not appealable. (*Estate of Schechtman* (1955) 45 Cal.2d 50, 54 [5] [286 P.2d 345]; *Estate of Smead* (1938) 12 Cal.2d 20, 26 [6] [82 P.2d 182].)

As will appear, we have concluded that the portions of the order appealed from should be reversed insofar as the court undertook to award to the trustee additional compensation for assertedly extraordinary services, over and above the compensation fixed by the testator and the decree of final distribution, but affirmed otherwise.

Security First National Bank is the trustee of the subject testamentary trust established under the will of Frederick M. Bissinger, admitted to probate on July 27, 1953. On December 10, 1954, a decree of final distribution was entered, declaring the terms of the trust in language substantially identical with that used by the decedent in his will. In particular the decree provided, in accordance with the will, that "For its services as trustee of this trust [the named trustee] shall receive an annual fee equivalent to one half of one

percent of the reasonable value of the corpus of the trust estate.'' No appeal was taken from that decree, and it has long since become final.

The trust estate, consisting of common stocks with a negligible amount of preferred stocks and no bonds, had a value of approximately $800,000. In May 1960 the trustee sold certain of the common stocks for a total sum of about $230,000. After capital gains taxes were paid out of the proceeds, the remaining $173,000 was invested in municipal bonds and the entire transaction was submitted for court approval in the trustee's seventh account current. Both the life-income beneficiary and the presumptive remainder beneficiaries filed objections to the seventh account, the former contending that further stock sales should have been made and the latter that the trustee had failed to exercise prudent judgment in making the sales it had made. The objections were heard and overruled, and the order settling and approving the seventh account current has been affirmed on appeal and is now final. (*Estate of Bissinger* (1963) 212 Cal.App.2d 831 [28 Cal. Rptr. 217].)

While the latter appeal was pending the trustee submitted for court approval its eighth account current, reporting further sales of common stocks, payment of capital gains taxes, and reinvestment of the remaining proceeds in municipal bonds. Applying the formula of 1/2 of 1 per cent of the reasonable value of the trust estate (as provided in the decree of final distribution), the trustee claimed for its fee the amount of $4,435. The trustee further claimed, however, $7,500 as compensation for services rendered by its attorneys in connection with the trial of the issues raised by the above mentioned objections to the seventh account current, and $5,000 as ''reasonable compensation for ... extraordinary services performed by petitioner in connection with the preparation of said trial.''

The present objectors as presumptive remainder beneficiaries filed objections to the eighth account on a variety of grounds. The objections were overruled, the court finding in particular that ''the Bank as Trustee performed extraordinary and unusual services in connection with the litigation of the issues raised by the objections and exceptions to the Trustee's Seventh Account Current and Report in addition to its usual, ordinary and recurring services; that the Bank as Trustee is entitled to be paid reasonable compensation for such extraordinary and unusual services and that the sum of

$5,000 constitutes reasonable compensation for said services rendered by the Bank as Trustee in connection with said litigation. ..." The court further determined that the trustee was entitled to the $4,435 fee sought by it "for the ordinary and recurring services rendered by it during the period covered by said [eighth] account."

On appeal objectors challenge principally the award to the trustee of the $5,000 additional compensation. Their other contentions will, however, be disposed of preliminarily.

### POWER OF TRUSTEE TO MAKE THE SALES REPORTED IN THE SEVENTH ACCOUNT CURRENT

■ Objectors urge that in making such sales the trustee exceeded its powers. As just related, however, the court's order approving the sales has become final, and it is conclusive upon objectors. (Prob. Code, § 1123; *Security-First Nat. Bank* v. *Superior Court* (1934) 1 Cal.2d 749, 755 [4] [37 P.2d 69].) Hence, objectors may not now relitigate that issue.

### ' COMPUTATION OF TRUSTEE'S ANNUAL FEE.

■ Objectors further contend that in determining the reasonable value of the trust estate for the purposes of computing the trustee's annual fee there should have been excluded from the valuation of the trust assets an amount equal to the capital gains tax liability occasioned by the sale of the common stocks. This contention is without merit.

■ The rule is that the computation of commissions to be paid executors and administrators is based on the value of all property accounted for and charged against the representative. (*Estate of Lampman* (1940) 15 Cal.2d 212, 216-217 [2] [100 P.2d 488]; *Estate of Carver* (1898) 123 Cal. 102, 106 [55 P. 770]; 4 Witkin, Summary of Cal. Law, Wills and Probate, p. 3212.) Trustees should be accorded at least equal treatment. (See *Estate of Duffill* (1922) 188 Cal. 536, 547 [4] [206 P. 42].) ■ No error is shown in this respect.

### ADDITIONAL COMPENSATION AWARDED TO TRUSTEE

Section 1120 of the Probate Code declares that "When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the

extent that such determination is not concluded by the decree of distribution, of settling the accounts and passing upon the acts of the trustee ... *and for the other purposes hereinafter set forth.* Any trustee ... appointed to execute a trust created by will, may, from time to time pending the execution of his trust ... render for settlement his accounts and report his acts as such trustee, before the superior court in which the will was probated...." (Italics added.)

Section 1122 directs that "On the settlement of each such account the court shall allow the trustee his proper expenses and such compensation for services as the court may deem just and reasonable...."

The Civil Code, in the chapter dealing with trusts for the benefit of third persons, states in section 2274 that "Except as provided in section 1122 of the Probate Code, *when a declaration of trust* is silent upon the subject of compensation the trustee is entitled to the same compensation as an executor. If it *specifies the amount* of his *compensation, he is entitled to the amount thus specified and no more.* If it directs ... a compensation, but does not specify the rate or amount, he is entitled to such compensation as may be reasonable under the circumstances. ..." (Italics added.) The emphasized language codifies a general principle of the law of trusts. (See, e.g., 3 Scott on Trusts (2d ed. 1956) § 242.4, p. 1936; Bogert, Trusts & Trustees (2d ed. 1962) § 976, pp. 359-366; Rest.2d Trusts, § 242; 161 A.L.R. 860-864, 870-876; 34 A.L.R. 918-921.) ▮ Equally well established in this state is the rule that "a decree of distribution that has become final is a conclusive determination of the terms and validity of a testamentary trust and of the rights of all parties thereunder" *(Estate of Loring* (1946) 29 Cal.2d 423, 427-428 [1], 432 [10] [175 P.2d 524], and cases there cited), including the trustees *(Goad* v. *Montgomery* (1898) 119 Cal. 552, 561 [51 P. 681, 63 Am.St.Rep. 145] ; see also *Estate of Keet* (1940) 15 Cal.2d 328, 333 [1-3] [100 P.2d 1045]).

Applying these rules in reversing an order wherein the probate court had undertaken to award a lesser compensation to the trustee than the annual fee provided in the will and the decree of distribution, it was held in *Estate of Bodger* (1955) 130 Cal.App.2d 416, 423 [6] [279 P.2d 61], that section 1122 of the Probate Code and section 2274 of the Civil Code are complementary, and further (pp. 418-424 [1-6], that where a testator in his will specifies an exact and definite percentage formula for compensating his testamentary trustee and where the decree of distribution, which has be-

come final, sets out such formula, the probate court may not in settling the trustee's account establish a new and different measure for compensating the trustee, since the decree of distribution is a conclusive judgment and the probate court is without authority to change the terms of the testamentary trust established by the decree.

It is equally well established, however, that a court of equity may modify certain terms of a trust on a proper showing of emergency or of changed conditions occurring after creation of the trust if the rights of all the beneficiaries may be protected. (*Estate of Van Deusen* (1947) 30 Cal.2d 285, 292-293 [5] [182 P.2d 565], and cases there cited; see also *Estate of Keet* (1940) *supra,* 15 Cal.2d 328, 333-334 [4]; *Estate of Traung* (1962) 207 Cal.App.2d 818, 829-831 [9] [24 Cal.Rptr. 872].) Further it appears that "In some cases the courts have awarded greater compensation than that fixed by the terms of the trust. Thus where owing to circumstances not anticipated at the time of the creation of the trust the duties of the trustee have become more onerous, the court has awarded greater compensation. In such a case the general principle that the court may permit deviations from the terms of the trust where owing to a change of circumstances compliance with those terms would defeat or substantially impair the accomplishment of the purposes of the trust, is applicable. If the compensation specified in the terms of the trust is so low that under the circumstances a competent trustee would not undertake to administer the trust, it would tend to defeat the purposes of the trust if a reasonable compensation were not allowed." (3 Scott on Trusts (2d ed. 1956) § 242.4, pp. 1937-1938.) Specifically applying this principle to the situation where a trustee sought additional compensation for "extraordinary services," over and above the compensation fixed in the declaration of trust, are such cases as *Kaiser* v. *Second Nat. Bank of New Haven* (1937) 123 Conn. 248 [193 A. 761, 763-764 [1]]; *Baydrop* v. *Second Nat. Bank* (1935) 120 Conn. 322 [180 A. 469, 470-471 [1, 2]]; and *Smith* v. *Stover* (1931) 262 Ill.App. 440. In the latter case the court stated (p. 443) that "The law is well settled in this State [Illinois] that the courts cannot put themselves in the place of the testator, and have no right to change the compensation fixed by the testator, except in case of an exigency, or an emergency. Such exigency or emergency must be of such a nature and character which threatens a proper administration of the trust, or endangers a full and

complete carrying out of the testator's intention. If such an exigency or emergency is shown to exist, then the law is otherwise, and the court has authority to see that the will of the testator is properly carried out.''

The following questions thus arise with respect to the subject award of extraordinary fees to the trustee:

1. Is jurisdiction to award such fees upon a proper showing vested in the superior court sitting in probate?

2. Did or could the necessity of defending the trustee's acts as submitted for court approval in its seventh account, both in the trial court and on appeal, constitute such an exigency or emergency as to warrant an award of compensation greater than that specified by the testator?

3. If so, did the trustee produce evidence sufficient to support the finding of the trial court that it had rendered extraordinary and unusual services in connection with the litigation?

*1. Jurisdiction.*

■ The rule is that ''while the superior court, sitting in probate, is a court of general jurisdiction, 'the proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory.' '' (*McPike* v. *Superior Court* (1934) 220 Cal. 254, 258 [3] [30 P.2d 17]; see also *Auslen* v. *Superior Court* (1962) 58 Cal.2d 820, 823 [2] [27 Cal.Rptr. 8, 377 P.2d 72].)

■ Further, ''There is a fundamental distinction between the law and equity jurisdiction of the superior court and its probate jurisdiction. The latter is a strictly limited one. [Citations.] ... Except for [section 1120 of the Probate Code] ... the superior court would have no authority, in the exercise of its probate jurisdiction, to hear and determine the account presented by a testamentary trustee.'' (*Estate of McLellan* (1936) 8 Cal.2d 49, 55-56 [4] [63 P.2d 1120]; *Wells Fargo Bank etc. Co.* v. *Superior Court* (1948) 32 Cal. 2d 1, 5 [1] [193 P.2d 721].) ■ Although ''The probate court has no general equity jurisdiction. ... It has the power ... to apply equitable and legal principles in aid of its functions as a probate court.'' (*Security-First Nat. Bank* v. *Superior Court* (1934) *supra*, 1 Cal.2d 749, 757 [10]; see also

*Estate of Charters* (1956) 46 Cal.2d 227, 236 [5-6] [293 P.2d 778], and cases there cited; *Estate of Eilert* (1933) 131 Cal. App. 409, 415 [2] [21 P.2d 630].) ▮▮▮ Moreover, "the language employed in ... section [1120] of the Probate Code was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust." (*Estate of Marre* (1941) 18 Cal.2d 184, 187 [1] [114 P.2d 586]; *Estate of Smead* (1938) *supra*, 12 Cal.2d 20, 24 [3]; *Estate of Traung* (1962) *supra*, 207 Cal.App.2d 818, 828 [5]; *Estate of Smith* (1935) 4 Cal.App.2d 548, 552 [1] [41 P.2d 565].)

In applying the quoted rules it has been held that after distribution to the trustees the superior court sitting in probate has jurisdiction over testamentary trusts and trustees in the following instances and aspects, among others:

To hear petitions by beneficiaries for payments to themselves—and not solely petitions brought by trustees. (*Estate of Marre* (1941) *supra*, 18 Cal.2d 184, 187 [1]; *Estate of Smith* (1935) *supra*, 4 Cal.App.2d 548, 552 [1].)

Over controversy between trustee and one claiming to be the issue of certain persons so as to qualify as a beneficiary of the trust. (*Estate of Smith, supra.*)

In settling trustee's fifth annual account, to find facts justifying the conclusion that by reason of mistake by the trustee the life beneficiary had during periods covered by the four former accounts received more money than he was entitled to and to order the trustee to take steps to recover the excess from the beneficiary as well as to withhold all income from him until the excess had been made up—and this despite the fact that the orders settling the four former accounts had become final. The opinion declares that "Without doubt the court, in the exercise of its equitable jurisdiction, has the power, in a proper case and in a proper way, to grant relief from a final order or judgment obtained through fraud or mistake." (*Estate of Eilert* (1933) *supra*, 131 Cal.App. 409, 415 [2].)

In hearing trustee's petition for instructions, to "interpret" the decree of distribution and order certain undistributed income paid over to the life income beneficiary, contrary to trustee's contention that the beneficiary was bound by a decree settling an earlier trustee's account—as the trustee was then occupying the dual position of trustee and of guardian of the beneficiary's estate and there had been no

adversary decision. "[T]he probate court therefore had jurisdiction to inquire into it. Having jurisdiction . . . under section 1120 ... the court could 'bring to its aid the full equitable and legal powers with which as a superior court it is invested.' " (*Estate of Charters* (1956) *supra*, 46 Cal.2d 227, 236 [5-6].)

To surcharge a trustee on the hearing of her account, as "an implied power stemming from the power to settle a trustee's account and determine what trust property he has in his hands ... and ... to determine all issues necessarily incidental thereto." (*Estate of Hensel* (1956) 144 Cal.App.2d 429, 437 [14-15] [301 P.2d 105]; see also *Estate of McLellan* (1936) *supra*, 8 Cal.2d 49, 55 [2].)

Following death of incompetent life beneficiary, to hear petition of her guardian for an order that the trustee reimburse him for expenses of caring for the beneficiary. (*Estate of Mullins* (1961) 190 Cal.App.2d 413, 416 [12 Cal.Rptr. 3].)

And more recently it was held, in *Estate of Traung* (1962) *supra*, 207 Cal.App.2d 818, 828-829 [6-8], that in the course of supervising a testamentary trust the superior court sitting in probate was empowered to order that, because of a change of circumstances, the trustees should pay to one of the beneficiaries his share of the trust corpus despite the fact that conditions attached by the testator to such payment (carried into the final decree of distribution *to the trustees*), had not been satisfied. In so holding, the court pointed out (p. 828 [5]) that the probate court's authority to permit the trustee to deviate from terms of the trust upon a proper showing of changed conditions was assumed in *Estate of Keet* (1940) *supra*, 15 Cal.2d 328, 334 [4], and assumed, *arguendo*, in *Estate of Van Deusen* (1947) *supra*, 30 Cal.2d 285, 292-293 [3b, 6]. (See also *Estate of Loring* (1946) *supra*, 29 Cal.2d 423, 433 [11]; *Keyston* v. *Keyston* (1950) 96 Cal.App.2d 550 [215 P.2d 754].) Further, said the court (pp. 828-829 [6-8] of 207 Cal.App.2d), "In our view, the broad jurisdiction of probate courts over testamentary trusts was intended to include the power to modify the trust in proper cases. ... Such power, we think, is necessarily incident to the judicial supervision which the section seeks to achieve. Among other things, the statute confers authority upon the court to pass upon the trustee's acts. The probate court must have the power not merely to measure the trustee's acts by the testator's directions but also determine whether the directions should be adhered to inflexibly in all instances. Complete and

effectual supervision, we think, results from the court's power to determine, as the court exercising general equity powers does, whether in the light of existing conditions, the primary objectives and dispositive plan of the testator is being subserved or frustrated by his administrative directions. This power is of the essence of the enforcement and administration of trusts. If it is not given full play, judicial supervision is nullified by its own inertia. We hold therefore that the court below had the power under section 1120 to authorize or direct a deviation from the terms of the trust." Additionally, it was pointed out (p. 829, fn. 8) that further evidence of the court's power is found in provisions of the second paragraph of section 1120, specifying the procedural steps to be taken "When it appears from the allegations of the petition that the trustee seeks instructions to exercise a power not conferred upon him."

In *Estate of Keet* (1940) *supra,* 15 Cal.2d 328, it was held that although an earlier probate court order authorizing a testamentary trustee to sell certain of the trust assets may have been error (pp. 333-334 [4]) "in the light of the language of the will and decree [of distribution], and the lack of any sufficient showing of emergency arising from changed conditions and justifying deviation from the trust provisions," nevertheless when the trustee "petitioned for instructions and authority to sell, it sought a judicial determination of its powers under the will, the decree, and the applicable law. The court, in granting the petition, made an adjudication of such powers. Its jurisdiction over such proceedings is established by section 1120 ..., and appellant [trustee] complied with all procedural requirements of the section. Having jurisdiction of the subject matter and of the parties, the order of the court, whether correct or not, became *res judicata* on the issue of power to sell." Further, commented the court, "It would also have been possible for the trustee, upon a proper showing, to secure permission from the court to deviate from express restrictions against sale."

In *Estate of Loring* (1946) *supra,* 29 Cal.2d 423, following distribution to the testamentary trustees but before expiration of the five-year period within which the corpus was to be distributed to the beneficiaries, it appeared that the corpus had lost approximately two-thirds of its value. Beneficiaries who were relatives of the testator contended that distribution should be made to them in preference to certain charitable beneficiaries and contrary to terms of the final decree of dis-

tribution to the trustees. In modifying the probate court's order so that it would provide for distribution "pro rata to the beneficiaries ... in proportion to the specific sums provided in the decree of distribution" (p. 439), we declared (p. 433 (11]) : "It must be conceded that ... the probate court has jurisdiction to determine in the light of the changed circumstances how to divide the trust estate among the beneficiaries. It cannot make that determination, however, by reopening issues that were conclusively passed upon in the distribution proceedings. Section 1120 itself contemplates that the exercise of the court's equity jurisdiction is so limited, for it provides that the court may determine to whom the property shall pass upon the termination of the trust, 'to the extent that such determination is not concluded by the decree of distribution.' "

In the light of the above decisions it appears that upon a proper showing of exigency or emergency the superior court sitting in probate has, and is intended by the Legislature to have (see *Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361, 370-371 [5-8] [273 P.2d 897]), jurisdiction to change the compensation of the trustee as fixed by the testator and the decree of distribution. A contrary holding which would require the trustee to institute a separate proceeding in the superior court to adjudicate such compensation would result in the "anomalous situation" (see *Wells Fargo Bank etc. Co.* v. *Superior Court* (1948) *supra,* 32 Cal.2d 1, 12 [9]) that the trustee would be obliged to seek the approval of two courts as often as exigency or emergency arose requiring it to render extraordinary services.

Probate Code section 1122 directs the court sitting in probate to allow the trustee his compensation "On the settlement of each ... account" and section 1240 makes an order settling a trustee's account appealable. Thus we do not have here the situation presented in *Estate of Schloss* (1961) 56 Cal.2d 248 [14 Cal.Rptr. 643, 363 P.2d 875], in which it was held that the court sitting in probate is without jurisdiction to remove a testamentary trustee, that (pp. 257-258 [14]) its order purporting to do so was void, and that the court's power to remove such a trustee must be exercised pursuant to its general equity jurisdiction under section 2283 of the Civil Code. We there said, in listing factors supporting this view (p. 255 [7]), "Most significantly ... section 1240 ... makes no provision for an appeal from an order removing a trustee. ... It seems highly improbable that if the Legislature had intended to give the court sitting in probate jurisdiction to

remove a trustee it would not have provided for an appeal from such order, when it has provided for appeal from ... all other orders which the court in probate is authorized to make in the exercise of its jurisdiction over testamentary trusts.'' (See also *Estate of Gilmaker* (1962) 57 Cal.2d 627, 630 [1] [21 Cal.Rptr. 585, 371 P.2d 321]; *Auslen* v. *Superior Court* (1962) *supra*, 58 Cal.2d 820, 823 [3]; *Security-First Nat. Bank* v. *Superior Court* (1934) *supra*, 1 Cal.2d 749, 752 [1].)

It is also noted that where no question has arisen concerning a fee fixed by the trust instrument, the court sitting in probate has seemingly unchallenged jurisdiction to, and in practice does, upon adequate factual showing, award special compensation to trustees for extraordinary services. (See *Estate of McLaughlin* (1954) 43 Cal.2d 462, 465 [274 P.2d 868]; *Estate of Lopez* (1947) 79 Cal.App.2d 399, 403 [2] [179 P.2d 621]; *Estate of Griffith* (1950) 97 Cal.App.2d 651 [218 P.2d 149].)

2. *Did the defense, through litigation, of the trustee's acts constitute an exigency or emergency justifying an award of compensation to the trustee beyond that provided in the trust instrument?*

As appears from the opinion rendered in such litigation (*Estate of Bissinger* (1963) *supra*, 212 Cal.App.2d 831, 834-836 [2a]) the controversy arose out of disagreements between the life income beneficiary and the remaindermen as to whether trust assets should be so managed as to produce a greater income for the former on the one hand, or on the other hand a greater corpus for eventual distribution to the latter. The trustee, under the broad authority granted to it by the trust instrument (*Estate of Bissinger, supra*, at pp. 833-834 [1]), seemingly followed a course midway between the conflicting demands—with the result that it found itself defending its acts in the ensuing litigation. We are constrained to the view, however, that a trustee who has consented to act as such and has accepted the trust under an instrument specifically fixing his fee, should not be heard to claim that defending the acts of management and judgment which he undertakes to perform in return for such fee, creates an exigency or emergency for which he should receive additional compensation. As pointed out in *Smith* v. *Stover* (1931) *supra*, 262 Ill. App. 440, 443, in holding that a trustee's dissatisfaction provided no ground for increasing the fee fixed in the will, ''Such exigency or emergency must be of such a nature and character which threatens a proper

administration of the trust, or endangers a full and complete carrying out of the testator's intention. If such an exigency or emergency is shown to exist, then ... the court has authority to see that the will of the testator is properly carried out." And in *Estate of Schinasi* (1957) 3 N.Y.2d 22 [163 N.Y.S.2d 644, 650 [5], 143 N.E.2d 369, 374 [5]], the highest court of New York denied additional compensation to a testamentary trustee for its services in realty management including rent collections, stating that the trustee had "agreed to take fixed fees not for 'ordinary' services or any other particular kind of services as executor or trustee but for 'services,' " and that the fact that the trustee could have lawfully delegated the realty management functions to a paid agent was irrelevant. In *Banker's Trust Co.* v. *Forsyth* (1934) 266 Mich. 517 [254 N.W. 190, 192-193 [3]], relied upon by the trustee in the case at bench, the trust agreement itself provided for additional compensation for "unusual and exceptional services." And *Kaiser* v. *Second Nat. Bank of New Haven* (1937) *supra*, 123 Conn. 248 [193 A. 761, 763-764 [1]], and *Baydrop* v. *Second Nat. Bank* (1935) *supra*, 120 Conn. 322 [180 A. 469, 470-471 [1, 2]], also cited by the trustee, involve fees for trustees who found themselves rendering management services of certain trust real property in order to protect it, which were beyond the contemplation of the trust instrument; hence those cases are not persuasive here. ▆▆▆ It may, however, be noted that in approving the extra fee sought, the court in *Baydrop* commented (pp. 470-471 [1, 2] [180 A.]), that additional compensation beyond that fixed by the trust instrument may be allowed "for special and extraordinary services, outside and beyond the general duties of the trust, e.g., 'services of a nature not usually required of a trustee and for which he would have had the right to employ another person.' "

In the case at bench the trustee employed attorneys to represent it in the subject litigation, and has been allowed fees for the attorneys' services. Any services rendered by the trustee in assisting its attorneys do not qualify as emergency in nature.

*3. Evidence re extraordinary services.*

▆▆▆ The only evidence presented on the point is the declaration by an officer of the trustee bank that in connection with the earlier litigation "We did perform extraordinary services" and that in his opinion the fees requested therefor by the trustee were reasonable. Obviously, even if the award of additional compensation for allegedly extraordinary ser-

vices were otherwise warranted, the trustee should be required to show in detail the nature and extent of such services rendered by it, as distinguished from its attorneys, and the time and effort entailed thereby over and beyond usual and ordinary services. No such showing was made here; consequently, if for no other reason, the disputed award cannot stand. (Cf. *Purdy* v. *Johnson* (1917) 174 Cal. 521, 527-531 [163 P. 893]; *In re Haggerty's Estate* (Ohio, 1955) 128 N.E.2d 680, 687 [11].)

For the stated reasons the order settling the eighth account current is affirmed except as to the portion thereof which purports to award additional compensation to the trustee, which portion is reversed. The purported appeal from certain parts of the order overruling objections to such accounts is dismissed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.