Filed 9/25/15  Olson v. Adkins CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHRISTOPHER SCOTT OLSON et al., | E060133 & E060782 |
| Plaintiffs and Respondents, | (Super.Ct.No. PSP1300082) |
| v. | **ORDER MODIFYING OPINION AND DENIAL OF PETITION FOR REHEARING** |
| LOWELL D. ADKINS, Individually and as Trustee etc., | |
| Defendant and Appellant. | **[NO CHANGE IN JUDGMENT]** |

Respondent's petition for rehearing filed September 17, 2015, is denied.  The opinion filed in this matter on September 9, 2015, is modified as follows:

On page 16, the first full sentence of paragraph two should read:

"Therefore, in spite of the Solano court's finding that the trust owed Nancy $6,204.32, there was no money available for distribution until the Buxton settlement was completed."

On page 18, remove footnote 3 in its entirety.

1

Except for this modification, the opinion remains unchanged.  This modification does not affect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.

Filed 9/9/15  (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CHRISTOPHER SCOTT OLSON et al., | |
| Plaintiffs and Respondents, | E060133 & E060782 |
| v. | (Super.Ct.No. PSP1300082) |
| LOWELL D. ADKINS, Individually and as Trustee etc., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James A. Cox, Judge.

Affirmed.

Law Office of Michael A. Kruppe, Michael A. Kruppe; Greines, Martin, Stein & Richland, Timothy T. Coates, Marc J. Poster and Alana H. Rotter for Defendant and Appellant.

Best Best & Krieger, Kira L. Klatchko, G. Henry Wells and Irene S. Zurko for Plaintiffs and Respondents.

1

# I

## INTRODUCTION[1]

Lowell D. Adkins, appellant, was the trustee for a testamentary trust between 2004 and 2013. The primary beneficiary of the trust was Adkins's live-in partner, Nancy P. Jones. Two of the six remainder beneficiaries were Nancy's nephews, respondents Christopher Scott Olson and Kevin Linne Olson. While Adkins was trustee, the value of the trust was reduced from $280,000 in 2007 to $30,175 in 2013. After Nancy died in 2011, the Olsons filed a petition in 2013 to remove Adkins as trustee. After a trial, the probate court entered a total judgment of about $280,000 in favor of the Olsons.

Adkins appeals. After reviewing his challenges, we hold substantial evidence supports the judgment and the probate court did not abuse its discretion. We affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

*A. 1983-1987*

W. Kenneth Jones executed a will in 1983 and died in 1986. His will established a testamentary trust, naming Nancy, his wife, as the primary beneficiary, and six other relatives—including the two Olson respondents—as remainder beneficiaries. The final decree of distribution, creating the testamentary trust, was entered in Solano County in

---

[1] We use first names for ease of reference when necessary.

August 1987. The value of the total assets then was $1,820,059.86.

Kenneth's will gave most of his estate to Nancy. The residue of the estate was shares of Suisun Valley Foods, Inc. stock worth $500,000, or assets of an equivalent value, to be placed into the trust. The will states that Kenneth's "primary concern in establishing this trust is my wife's support, and that the interests of others in the trust are to be subordinate to hers." Nancy was entitled to the trust's entire net income during her lifetime. It included several other provisions for distributing principal to her as necessary. Any remainder was to be distributed to the six remainder beneficiaries. Roy L. Olson, Nancy's brother-in-law and Christopher and Kevin's father, was appointed as the first trustee.

## B. 1990-2004

Nancy and Adkins began their relationship in 1992 or 1993. They lived in her house, which they held in joint tenancy. Adkins was the beneficiary of Nancy's will, executed in July 2004.

The trust was not funded by the Suisun Valley Foods, Inc. stock. When the stock was sold in the early 1990's for cash and a promissory note (the Buxton note), Nancy kept the proceeds. In the late 1990's, Roy sued Nancy, contending that she had retained the sales proceeds instead of funding the trust. Roy was subsequently removed for cause and replaced by Jim Grassman. Grassman, acting on behalf of the trust, settled the litigation with Nancy. The Solano County Superior Court approved the settlement agreement in a written order in 2004.

3

The settlement provided that the value of the assets due to the trust was $218,516.22. The 2004 order found that the trust consisted of the "unfunded present value (that is, the right to receive all proceeds) of" the Buxton note, and required Nancy to assign her right to proceeds of the note to the trust. The court further found that the trust owed Nancy $6,304.32 for various credits but that there were no liquid assets in the trust to pay her.

C. *2004-2013*

The 2004 order approving the settlement appointed Adkins as trustee. He had no experience as a trustee. No beneficiary objected to Adkins's appointment. Adkins interpreted the language of the trust to mean that he owed no fiduciary duty to the other trust beneficiaries during Nancy's lifetime.

Adkins instituted litigation to enforce the Buxton note and obtained $280,000 in settlement in 2007. Adkins posted a trust bond in that amount.

Beginning in 2007, Adkins made various distributions to Nancy, amounting to $153,042 over five years. Adkins also repaid the loans of about $54,000 used to finance the Buxton litigation, and paid himself trustee's fees of $18,225.

Nancy died in May 2011. In 2012, the trust balance was about $37,000. Adkins reduced the amount of the trustee's bond to reflect that amount.

In December 2012, Adkins, acting as an individual, filed a notice of levy against Christopher's interest in the trust. The notice of levy was based on a $40,000 default

4

judgment that Adkins and Nancy had obtained against the Olson brothers in 2004. Adkins subsequently learned the levy violated the trust and did not enforce it.

Also in December 2012 and acting as an individual, Adkins sued Merrill Lynch and four of the remainder beneficiaries, including the Olsons, regarding the distribution of assets in Nancy's IRA account. Although the four remainder beneficiaries were designated as beneficiaries on the IRA account, Adkins contended that Nancy had intended to make him the beneficiary. Adkins did not prevail and the four beneficiaries each received about $67,000 from the IRA account.

On January 31, 2013, Adkins formally notified the trust's six remainder beneficiaries by letter that he was in the process of closing the trust and distributing its remaining assets of $30,175. An accounting showing that each remainder beneficiary was entitled to either $4,828 or $5,129.75. The notice requested that each beneficiary acknowledge receipt of his or her distribution, waive any further accounting, and release Adkins from all claims and objections.

*D. The Trust Litigation*

On February 5, 2013, the Olsons filed the present litigation, alleging that Adkins had made improper payments to the primary beneficiary, Nancy, and had breached various fiduciary duties. The petition sought to remove Adkins and compel an accounting; to appoint a successor trustee; to surcharge Adkins; and to award petitioners their attorney's fees. The petition alleged the value of the trust was about $366,000. The other four remainder beneficiaries did not join the petition. Adkins opposed the petition,

5

contending that he had properly administered the trust. By September 2013, there was only $10,000 remaining in the trust.

In its written decision, the probate court found that Nancy had failed to fund the trust until the 2004 settlement, which funded the trust in the net amount of $218,516.22, the value of the Buxton note. The court found Adkins had a conflict of interest because he was Nancy's live-in partner and because she was entitled to limited invasion rights of the trust res. The probate court concluded that Adkins had breached his fiduciary duty and acted without reasonable cause and the court imposed various surcharges. The judgment ordered Adkins to pay the trust $154,086.82 in damages, plus $74,436.35 in prejudgment interest.

The probate court also awarded the Olsons their attorney's fees under Probate Code section 17211, subdivision (b),[2] because it found Adkins had acted in bad faith and without reasonable cause. As set forth in the statement of decision: "In this action, respondent [Adkins] was defending the account which he presented to the remainder beneficiaries with his letter of January 31, 2013 . . . . Taking into consideration all of the findings set forth above, the court finds that the opposition to the account was without reasonable cause and the court may award the contesting beneficiaries their costs and attorney fees pursuant to Probate Code § 17211(b). The court finds the contesting beneficiaries are entitled to recover from respondent their reasonable attorney fees

_____

[2] All statutory references are to the Probate Code unless stated otherwise.

together with their costs of suit.  The reasonable attorney fees shall be determined and apportioned by the court as the court, in its discretion, deems fair and just."

The Olsons made a motion for fees and costs of about $62,000.  Adkins did not object to the motion on the grounds that he did not act without reasonable cause.  The trial court found that $325 per hour was an appropriate lodestar rate for attorney time and, on that basis, awarded fees of $51,252.50.  The total amount awarded against Atkins was $279,775.67.

III

DISCUSSION

*A.  General Principles*

A trustee owes all beneficiaries a fiduciary duty.  (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1208.)  A trustee's duties include the "duty to administer the trust solely in the interest of the beneficiaries" (§ 160002, subd. (a)); the duty to deal impartially with multiple beneficiaries, "taking into account any differing interests" (§ 16003); and the "duty to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property."  (§ 16006.)  A trustee must avoid conflicts of interest.  (§ 16004.)  Even when a trustee has absolute discretion—such as Adkins seems to claim here—sections 16080 and 16081 require a trustee to exercise his discretion reasonably, acting in accordance with fiduciary principles and not acting in bad faith or in disregard of the purposes of the trust.  (*Hearst,* at p. 1208.)

7

A trustee's exercise of discretion is not subject to court control except to prevent an abuse of that discretion or bad faith: "Whenever a trust properly comes under judicial supervision, it is the general rule that where a trustee is given discretionary powers, the court will not control the trustee's actions exercised pursuant thereto merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere. (*Estate of Greenleaf* [(1951)] 101 Cal.App.2d 658, 662.) Too, while the court may not substitute its judgment for that of the trustee, if it finds on substantial evidence that his powers have been reasonably exercised, the question is not open to review (*Estate of Genung* [(1958)] 161 Cal.App.2d 507, 512); a contrary finding, of necessity, is governed by the same legal principle. The determination whether the evidence is sufficient to support the finding of the trial court that the trustee has been guilty of an abuse of discretion compels an inquiry into the intentions of the settlor in providing for the beneficiary as was done and an examination of the conduct of the trustee in the administration of the trust. (*Estate of Ferrall* [(1953)] 41 Cal.2d 166, 174.)" (*Estate of Flannery* (1969) 269 Cal.App.2d 890, 896-897.)

## B. Breach of Fiduciary Duty

The Olsons sued Adkins for breach of fiduciary duty: "In order to plead a cause of action for breach of fiduciary duty against a trustee, the plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach; the absence of any one of these elements is fatal to the cause of action. [Citation.] The beneficiary of the trust has the initial burden of proving the existence of a fiduciary duty

8

and the trustee's failure to perform it; the burden then shifts to the trustee to justify its actions. (*Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 853.)" (*LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517.)

The parties strenuously argue about whether the probate court correctly applied the burden of proof. Both parties cite *Van de Kamp*, holding that a beneficiary has "the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it. . . . The burden then shifts to the trustee to justify its actions." (*Van de Kamp v. Bank of America, supra,* 204 Cal.App.3d at p. 853, citing *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108, and *Remillard Brick Co. v. Remillard-Dandini* (1952) 109 Cal.App.2d 405, 420; *Estate of Ferrall, supra,* 41 Cal.2d at p. 177.)

Adkins argues the probate court incorrectly shifted the burden of proof by applying a presumption that Adkins acted improperly in obtaining an advantage over the remainder beneficiaries and by improperly relying on section 16004, subdivision (c). Instead, Adkins maintains there should be a presumption in favor of the regularity of his actions. (*Neel v. Barnard* (1944) 24 Cal.2d 406, 420-421.) Adkins also objects to the trial court requiring him to act impartially as between Nancy and the remainder beneficiaries because his primary duty under the terms of the trust was to Nancy. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944; *Hearst v. Ganzi, supra,* 145 Cal.App.4th at p. 1208; §§ 16003, 16202, 16335, and 21102, subd. (a).)

In response, the Olsons argue that, when a plaintiff establishes a fiduciary relationship and alleges wrongdoing by a trustee, the trustee is presumed to have

9

breached his fiduciary obligations and the burden of proof shifts to him. (*Bradner v. Vasquez* (1954) 43 Cal.2d 147, 152; *Estate of Ferrall, supra,* 41 Cal.2d at pp. 173-174; *Neel v. Barnard, supra,* 24 Cal.2d at p. 420.) Furthermore, the Olsons contend section 16004, subdivision (c), applies to any transaction taken by a trustee, acting as a fiduciary, on behalf of the beneficiaries. (*Remillard Brick Co. v. Remillard-Dandini, supra,* 109 Cal.App.2d at p. 420.) Thus, Adkins had to prove there was no presumption of wrongdoing by a preponderance of the evidence. (Evid. Code, §§ 115, 190, 604, and 606; *Pryor v. Bistline* (1963) 215 Cal.App.2d 437, 448.)

We recognize that the probate court's reference to section 16004 occurs only in the portion of its decision in which it discussed Adkins's distributions of principal in the amount of $17,500. The probate court found that Atkins had not acted impartially because he had personally benefitted from the distributions. Citing section 16004, the probate court stated: "A trustee has a duty to avoid a conflict of interest and creates a presumption in favor of the beneficiary which shifts the burden of proof."

In our view, whether section 16004 expressly applies to every act by Adkins as a trustee or whether the probate court applied a presumption against Adkins, the court correctly allocated the burden of proof. Once the Olsons alleged a breach of fiduciary duty and it was established that the value of the trust had fallen from $280,000 in 2007 to $30,175 in 2013, the burden fell on Adkins to justify his administration of the trust to the probate court. A surcharge order is reviewed for abuse of discretion. (*Estate of Bonaccorsi* (1999) 69 Cal.App.4th 462, 467-468.) With respect to each of Adkins's

10

challenges to the various surcharges, as discussed below, we agree the probate court properly analyzed his claims in its decision and did not abuse its discretion.

*C. The Surcharge of $68,690.03*

After Adkins sued on the Buxton note and recovered $280,000 in 2007, he paid Nancy $74,031, characterizing it as income to which she was entitled during her lifetime because it reflected interest due on the note between 2004 and 2007. The court found that, because Adkins had failed to keep proper records, all uncertainty about how to allocate the $280,000 settlement should be resolved against him. (*Estate of McCabe* (1950) 98 Cal.App.2d 503, 505.)

We reject Adkins's argument that $74,031 of the $280,000 settlement should have been allocated as interest (or income) before principal, in accordance with the Uniform Principal and Income Act and with Kenneth's primary purpose to provide for Nancy's support. (§§ 16335, subd. (b), 16361, subds. (a)(l), (2)(b).) Both of the statutes relied upon by Adkins involve the trustee's discretion to make allocations between principal and income. The probate court found that Adkins's records were not adequate to explain or justify his decision to allocate more than 25 percent of the settlement to income. Adkins provided little documentation about the characterization of the $280,000 settlement or about Nancy's needs from the trust. The trustee's failure to keep proper accounts meant the probate court could resolve all doubts against the trustee. (*Purdy v. Johnson* (1917) 174 Cal. 521, 527; *Estate of McCabe, supra,* 98 Cal.App.2d at p. 505.)

11

Section 16361 actually required the settlement to be allocated to principal: "If no part of a payment is required to be made or the payment received is the entire amount to which the trustee is entitled, the trustee shall allocate the entire payment to principal." (§ 16361, subd. (c).) The probate court allocated $218,516.22 as the principal balance of the note under the 2004 settlement agreement. The additional amounts for fees and costs were subtracted from the settlement amount, leaving a balance of net income of $5,340.97 to Nancy. Even under the terms of the trust, that amount is what she was entitled to receive as the trust income, not $74,031. The surcharge of $68,690.03—the difference between $74,031 and $5,340.97—was not an abuse of discretion.

## D. The Surcharge of $17,500 for Principal Distributions

Adkins distributed $17,500 in principal for Nancy's support: $10,000 in 2008 and $7,500 in 2011. The trial court surcharged Adkins for this entire amount, plus prejudgment interest from the dates of distribution, for a total of $24,135.61. The court cited Adkins's testimony, in which he said he believed he had no duty to the remainder beneficiaries while Nancy was alive, and the fact that Adkins indirectly benefitted from distributions because he and Nancy lived together and shared expenses. The court found Adkins had a conflict of interest that "affected his handling of this trust" and applied a presumption in favor of the remainder beneficiaries, shifting the burden of proof to Adkins. The court also found that Adkins failed to meet his burden of overcoming that presumption because he presented little evidence, except his own testimony, about Nancy's available assets and resources at the time he made the distributions.

12

The trust gave Adkins discretion to make principal distributions he deemed necessary for Nancy's support. The interests of others in the trust were to be subordinate to hers. Adkins believed he had no limits on his absolute discretion: "I was to exercise my discretion based on evaluating her annual requests as to whether or not she had other assets that could take care of that. But my understanding of this was, that there were no limitations on the discretionary nature of the principal." Adkins's discretion, however, was not unfettered. He was required by statute to act impartially, while "taking into account any differing interests of the beneficiaries." (§ 16003; *Hearst v. Ganzi, supra,* 145 Cal.App.4th at p. 1208.) Even if he had absolute discretion, sections 16080 and 16081 require a trustee to act reasonably, in accordance with fiduciary principles and not in bad faith or in disregard of the purposes of the trust. (*Ibid.*)

Furthermore, Adkins did not submit persuasive evidence to support his contention that he gave due consideration to Nancy's needs and resources in authorizing the principal distributions of $17,500. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 771, citing *Purdy v. Johnson, supra,* 174 Cal. at pp. 527-531.) He claimed he based the distributions in 2008 and 2011 on what he generally knew about Nancy's health problems and financial needs for mortgage payments, lawyer's fees, and living expenses. But he offered little support for these assertions except for a 2004 document showing Nancy had few assets and that her income was about $1,450 monthly in social security and about $2,000 in yearly income from securities. The probate court found there was no similar evidence offered in support of the 2008 and 2011 distributions. We conclude substantial

13

evidence supports the probate court's findings that Adkins had a conflict of interest and did not act impartially, given the differing interests of the beneficiaries. The probate court properly surcharged Adkins $24,135.61.

*E. Surcharge for 5-or-5 Distributions of $47,016.82*

Nancy was entitled upon written request to regular distributions of principal during her lifetime, in an amount up to $5,000 or 5 percent of the value of the principal each year, the "5-or-5" provision: "This right of withdrawal is non-cumulative, so that if my wife does not withdraw, during any calendar year, the full amount to which she is entitled under this provision, her right to withdraw the amount not withdrawn shall lapse at the end of that calendar year." The *Cairns* court concluded that the "noncumulative" limitation "refers to the total *amount* of the permissible distributions in a calendar year, not the date by which the demand must be exercised." (*Estate of Cairns, supra,* 188 Cal.App.4th at p. 945.)

In July 2004, the Solano County Superior Court found that Nancy's "2003 entitlement" under the 5-or-5 provision was $10,839.23, offset against a debt Nancy owed to the Trust, "leaving the Trust owing [Nancy] the sum of $6,304.32." The trust had no liquid assets to pay Nancy.

After Adkins obtained the $280,000 Buxton settlement in 2007, he made annual distributions to Nancy totaling $47,016.82: 1) $37,016.82, representing her entitlement for 2003-2006 (including the $6,304.32 obligation), paid in April 2007; 2) $5,000 representing her 2007 entitlement, paid in January 2008; and 3) $5,000, representing her

14

2008 entitlement, paid in February 2009. The trial court found that these distributions breached the 5-or-5 provision's "time limitations," and surcharged Adkins the total amount of $47,016.82, plus $28,845.05 in prejudgment interest.

Section 16440 gives the court discretion to excuse the trustee from liability for a breach of trust where the trustee has "acted reasonably and in good faith under the circumstances as known to the trustee." (§ 16440, subd. (b).) Adkins argues the surcharge was not equitable. Adkins reasons that the trust evinces a clear intent to provide for Nancy's support, entitling her to receive the net income, the principal as necessary for her support, and payments under the 5-or-5 provision.

Adkins testified that he thought Nancy was entitled to retroactive 5-or-5 payments because the 2004 court order found that the trust owed Nancy 5 percent of the value of the unpaid Buxton note for 2003, and the settlement agreement underlying the 2004 order also gave Nancy a $93,914.20 credit as a 5-or-5 entitlement for 1997-2002. Adkins contends he could reasonably conclude, based on the 2004 settlement, that Nancy was entitled to retroactive 5-or-5 payments. He also explained the $5,000 distributions for 2007 and 2008 were properly made in 2008 and 2009 for favorable tax purposes.

Adkins further argues the 5-or-5 payment did not need to be made in the calendar year for which it was requested, even if the right of withdrawal was noncumulative. Otherwise, the probate court's interpretation that the trustee must pay in the same year in which the entitlement arises—that is, must pay Nancy's 2007 and 2008 entitlements in the same years—would create a practical difficulty in calculating amounts. Adkins

15

maintains there is no reason why a payment should be impermissible because it occurred a month or two after the year in which the entitlement arose and was requested.

One problem with Adkins's argument is the trust had no assets until 2007. Therefore, in spite of the Solano court's finding that the trust owed Nancy $56,204.32, there was no money available for distributions until the Buxton settlement was completed. The Solano court did not order the trustee to pay Nancy. Under these circumstances, the 5-or-5 distribution could not occur until 2007. Therefore the distributions made for 2003-2006 were untimely because they were made years after the right to withdraw had lapsed.

As for the $5,000 distribution for 2007, the probate court observed there was no written request from Nancy. The court regarded all the written requests submitted by Adkins later as lacking credibility. Furthermore, although the probate court let stand the 5-or-5 distributions for 2009-2011, it apparently regarded the distributions for 2007 and 2008 as not being based on legitimate requests from Nancy even if they had been timely made at the end of the calendar year.

Based on its view of Adkins's overall administration of the trust, the probate court did not abuse its discretion. The record establishes that, in 2007, Adkins paid $74,031 to Nancy as income. Between 2007 and 2009, Adkins paid Nancy a total of $57,061.62 as principal distributions. He also paid $72,225 for attorney and trustee's fees. A trust worth $500,000 in 1986 and $280,000 in 2007 was reduced in value to about $77,000 by 2009. For that reason, and in light of Adkins's other conduct as a trustee in suing the

16

Olsons involving Nancy's IRA account, as well as levying on their trust interests, it was not an abuse of discretion for the probate court to find that Adkins had acted in bad faith and breached the trust by making untimely payments to Nancy of $47,016.82 under the 5-or-5 provision for the years 2003-2008. (*Estate of Markham* (1946) 28 Cal.2d 69, 73-74.)

*F. Surcharge of $74,436.35 for Prejudgment Interest*

The probate court also imposed a surcharge of $74,436.35 for prejudgment interest at 10 percent from the date of the distributions until the date of the court's decision in September 2013, pursuant to sections 16440 and 16441. The purpose of prejudgment interest is to compensate for the loss of income, not to punish a trustee. (*Edgar v. Bank of America* (1942) 50 Cal.App.2d 827, 833; *Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 102-103; *Title Ins. & Trust Co. v. Ingersoll* (1910) 158 Cal. 474, 488-489.)

Adkins asserts the remainder beneficiaries were not entitled to any interest that the trust earned before Nancy's death in 2011. Therefore, the court's award of prejudgment interest dating back to 2007 effectively requires Adkins to pay income from Nancy's lifetime to the remainder beneficiaries. Adkins argues any prejudgment interest should accrue only from the date of Nancy's death, May 2, 2011.

However, in view of Adkins's ongoing decimation of the trust res, it was not an abuse of discretion for the probate court to exercise its discretion, according to statute and its equitable powers, and award prejudgment interest from the date of each of Adkins's breaches of the trust: "(a) If the trustee is liable for interest pursuant to Section 16440,

17

the trustee is liable for . . . .  [¶]  (1) The amount of interest that accrues at the legal rate on judgments in effect during the period when the interest accrued."  (§ 16441; *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 923.)

### G.  Attorney's Fees

The court awarded attorney's fees under section 17211, which provides that "If a beneficiary contests the trustee's account and the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant" costs and attorney's fees.  (§ 17211, subd. (b).)  The court found that section 17211 applied here because "the opposition to the account was without reasonable cause" and "[t]he evidence supports findings of trustee's bad faith in the presentment of and the defense of his account."[3]  The court awarded fees of $51,252.50.

"Reasonable cause" is an objectively reasonable belief:  "The question here is the meaning of 'reasonable cause' with reference to the defense, rather than the prosecution, of a proceeding.  Contrary to the trial court, we believe that reasonable cause in this context does not require an objectively reasonable belief, based on the facts then known to the trustee, that the trustee would be completely exonerated.  Instead, we believe that reasonable cause to oppose a contest of an account requires an objectively reasonable belief, based on the facts then known to the trustee, either that the claims are legally or

---

[3]  In light of the probate court's express finding there was not reasonable cause, we do not understand why Adkins's counsel argued the opposite in oral argument.

18

factually unfounded or that the petitioner is not entitled to the requested remedies. Conversely, there would be no reasonable cause to oppose a contest of an account only if all reasonable attorneys would have agreed that the opposition was totally without merit, or, in other words, no reasonable attorney would have believed that the opposition had any merit. As with probable cause, we independently review the trial court's finding on the existence of reasonable cause absent any factual dispute as to [a trustee's] knowledge at the time." (*Uzyel v. Kadisha, supra,* 188 Cal.App.4th at p. 927.)

Adkins prevailed on a few issues. The probate court did not find fault with the expense of the Buxton litigation. The court allowed an income distribution to Nancy in 2009 and trustee's fees for administration of the trust between 2004 and 2007. The court also found that, following the Buxton note settlement, Adkins overpaid Nancy less than petitioners claimed. Overall, Adkins prevailed as to about $76,000, an impact not "totally without merit." (*Uzyel v. Kadisha, supra*, 188 Cal.App.4th at p. 927.) The Olsons recovered less than the $366,000 sought in their petition.

Nevertheless, the court expressly found Adkins acted in bad faith and without reasonable cause. Overall, his conduct as a trustee was a significant breach of his fiduciary duties. (*Estate of Gump* (1991) 1 Cal.App.4th 582, 597, 605.) The award of fees against Adkins was not a palpable abuse of discretion. (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234.)

We also reject Adkins's argument that his success on a few items meant that the Olsons could not recover any attorney's fees. The Olsons asked for $62,000 in fees and

19

costs.  The probate court awarded less, apparently engaging in an apportionment according to its discretion.  The *Uzyel* case specifically declined to consider apportionment under section 17211, subdivision (b).

## IV

## DISPOSITION

After the subject trust dwindled in value from $500,000 in 1986 to $280,000 in 2007, Adkins reduced it to about $30,000 by January 2013.  He also instituted two legal proceedings—the lawsuit involving Nancy's IRA account and the notice of levy—against the Olsons in violation of the trust.

Based on Adkins's breach of fiduciary duty, the probate court properly surcharged him and awarded prejudgment interest and attorney's fees.  We affirm the judgment.  The Olsons, as prevailing parties, shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


KING
Acting P. J.


MILLER
J.